Steve W. Berman (*pro hac vice pending*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: tomloeser@hbsslaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KLINGER, KAIULANI MUNA, ROBIN SPENCE, SUKETU DALAL, ANTHONY PALMIERI, LYLE MOORE, KATHRYN TILLISCH, and ROBIN HOLT, on Behalf of Themselves and All Those Similarly Situated, | No. |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| TAKATA CORPORATION, TK HOLDINGS, INC., HIGHLAND INDUSTRIES, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., | |
| Defendants. | |

CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.   NATURE OF CLAIM ......................................................................... 3

III.   JURISDICTION AND VENUE ........................................................ 14

IV.   THE PARTIES ................................................................................. 15

    A.   Plaintiffs ................................................................................. 15

        1.   Richard Klinger .......................................................... 15

        2.   Kaiulani Muna ............................................................ 16

        3.   Robin Spence ............................................................... 17

        4.   Suketu Dalal ............................................................... 18

        5.   Anthony Palmieri ....................................................... 20

        6.   Lyle Moore .................................................................. 21

        7.   Kathryn Tillisch ......................................................... 22

        8.   Robin Holt ................................................................... 24

    B.   Defendants ............................................................................. 25

V.   FACTUAL ALLEGATIONS ............................................................ 27

    A.   Takata is a Major Manufacturer of Airbags and Inflators ..................... 27

    B.   Honda Field Reports and Takata Internal Testing Reveal a Problem ................................................................................. 28

        1.   2008:  Recall 08V593. ................................................ 30

        2.   2009: Recall 09V259. ................................................. 31

        3.   Takata's Contact with NHTSA .................................. 33

        4.   2010:  Recall 10V041. ................................................ 35

        5.   2011:  Recall llV260. ................................................. 36

        6.   2013: Recall 13V132. ................................................. 36

    C.   Recalls and Notices Relating to Defective Airbag Inflators in Non-Honda Vehicles ................................................................................. 39

D.   Takata Fails to Meet Safety Standards and Maintain Airbag Quality ........................................................ 40

E.   Federal Investigations ................................................. 40

F.   Honda Has Failed to Provide Honda Owners Whose Cars have Defective Takata Airbags with Replacement Parts or Vehicles .......................................................... 41

VI.   TOLLING OF THE STATUTE OF LIMITATIONS .................................. 44

A.   Fraudulent Concealment .............................................. 44

VII.   CLASS ACTION ALLEGATIONS .................................................. 44

A.   The Nationwide Consumer Class ................................. 45

B.   The State Consumer Classes ....................................... 45

C.   Numerosity and Ascertainability ................................ 46

D.   Predominance of Common Issues .............................. 47

E.   Typicality ................................................................... 50

F.   Adequate Representation ............................................. 50

G.   Superiority ................................................................. 50

VIII.   CLAIMS FOR RELIEF .......................................................... 53

FIRST CLAIM FOR RELIEF  ON BEHALF OF THE NATIONWIDE CLASS VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT  (15 U.S.C. § 2301, *ET SEQ.)* ........................... 53

SECOND CLAIM FOR RELIEF  ON BEHALF OF THE NATIONWIDE CLASS FRAUD BY CONCEALMENT UNDER MICHIGAN LAW ............................................... 59

THIRD CLAIM FOR RELIEF  ON BEHALF OF THE CALIFORNIA CLASS (VIOLATION OF CALIFORNIA CIVIL CODE § 1770) ...................................................... 61

FOURTH CLAIM FOR RELIEF  ON BEHALF OF THE CALIFORNIA CLASS  (VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW)  (CAL. BUS. & PROF. CODE § 17200) ........................................................... 65

FIFTH CLAIM FOR RELIEF  ON BEHALF OF THE CALIFORNIA CLASS  (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY) (CAL. COM. CODE § 2314) ................................ 69

SIXTH CLAIM FOR RELIEF  ON BEHALF OF THE CALIFORNIA CLASS  (FRAUD BY CONCEALMENT) ........................... 70

- ii -

SEVENTH CLAIM FOR RELIEF  ON BEHALF OF THE FLORIDA
CLASS (DECEPTIVE ACTS IN VIOLATION OF FLORIDA
LAW)  (FLA. STAT**.** §§ 501.204, *ET SEQ***.**) ........................................... 72

EIGHTH CLAIM FOR RELIEF  ON BEHALF OF THE FLORIDA
CLASS (BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY) (FLA STAT. ANN **§** 672.314) ................................ 76

NINTH CLAIM FOR RELIEF  ON BEHALF OF THE FLORIDA
CLASS  (FRAUD BY CONCEALMENT) ....................................................... 77

TENTH CLAIM FOR RELIEF  ON BEHALF OF THE NEW
JERSEY CLASS  (DECEPTIVE ACTS IN VIOLATION OF
NEW JERSEY LAW)  (N.J. STAT. ANN**.** § 56:8-1, *ET SEQ*.)...................... 79

ELEVENTH CLAIM FOR RELIEF  ON BEHALF OF THE NEW
JERSEY CLASS  (BREACH OF THE IMPLIED
WARRANTY OF MERCHANTABILITY) (N.J. STAT. ANN.
§ 12A:2-314) .............................................................................................. 83

TWELFTH CLAIM FOR RELIEF  ON BEHALF OF THE NEW
JERSEY CLASS  (FRAUD BY CONCEALMENT) ....................................... 85

THIRTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE NEW
YORK CLASS  (DECEPTIVE ACTS IN VIOLATION OF
NEW YORK LAW)  (N.Y. GEN. BUS. LAW **§** 349 **,***ET SEQ***.**) .................... 87

FOURTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE NEW
YORK CLASS (BREACH OF THE IMPLIED WARRANTY
OF MERCHANTABILITY) (N.Y. U.C.C. LAW **§** 2-314)............................. 91

FIFTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE NEW
YORK CLASS  (FRAUD BY CONCEALMENT) ........................................... 92

SIXTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE OHIO
CLASS (DECEPTIVE ACTS IN VIOLATION OF OHIO
LAW)  (OHIO REV. CODE ANN. § 1345.02, *ET SEQ***.**) ............................. 94

SEVENTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE
OHIO CLASS (BREACH OF THE IMPLIED WARRANTY
OF MERCHANTABILITY) (OHIO REV. CODE ANN. §
1302.27).................................................................................................... 100

EIGHTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE OHIO
CLASS  (FRAUD BY CONCEALMENT) ..................................................... 101

NINTEENTH CLAIM FOR RELIEF  ON BEHALF OF THE
VIRGINIA CLASS (DECEPTIVE ACTS IN VIOLATION OF
VIRGINIA LAW)  (VA. CODE ANN**.** § 59.1- 196, *ET SEQ*.)..................... 103

TWENTIETH CLAIM FOR RELIEF  ON BEHALF OF THE
VIRGINIA CLASS (BREACH OF THE IMPLIED
WARRANTY OF MERCHANTABILITY) (VA. CODE. ANN.
§ 8.2-314) ................................................................................................ 107

- iii -

TWENTY FIRST CLAIM FOR RELIEF  ON BEHALF OF THE
VIRGINIA CLASS  (FRAUD BY CONCEALMENT) ................................ 109

TWENTY SECOND CLAIM FOR RELIEF  ON BEHALF OF THE
WASHINGTON CLASS (DECEPTIVE ACTS IN
VIOLATION OF WASHINGTON LAW)  (WASH. REV.
CODE § 19.86.020, *ET SEQ.*) ......................................................... 111

TWENTY THIRD CLAIM FOR RELIEF  ON BEHALF OF THE
WASHINGTON CLASS (BREACH OF THE IMPLIED
WARRANTY OF MERCHANTABILITY) (WASH. REV.
CODE ANN. § 62A.2-314) ................................................................. 114

TWENTY FOURTH CLAIM FOR RELIEF  ON BEHALF OF THE
WASHINGTON CLASS  (FRAUD BY CONCEALMENT) ...................... 116

PRAYER FOR RELIEF ......................................................................... 118

DEMAND FOR JURY TRIAL ................................................................ 119

# I.    INTRODUCTION

1.    A company that manufactures and sells airbags in automobiles must take all necessary steps to ensure that its products—which can literally mean the difference between life and death in an accident—function as promised and intended.  Profits *must* take a back seat to safety for the airbag manufacturer and the automobile manufacturer in making its product sourcing decisions.  Yet Takata and Honda put profits ahead of safety.  Takata cut corners to build cheaper airbags, and Honda bought its airbags from Takata to save money.  The result is that instead of saving lives, faulty Takata airbags in Honda automobiles are killing and maiming drivers and passengers involved in otherwise minor and survivable accidents.  Even more alarming, rather than take the issue head-on and immediately do everything in their power to prevent further injury and loss of life, Takata and Honda have engaged in a ten-year pattern of deception and obfuscation, only very recently beginning a partial recall of affected vehicles.  Takata went so far as to order its technicians to erase test results showing cracks in the steel casings that house their airbag inflators.

2.    Airbags are a critical component in the safety features of virtually every motor vehicle sold in the United States and throughout the world.  Currently, over 30,000 people are killed in motor vehicle accidents each year in the United States.  But that number is nearly half of what it was in 1966, when over 50,000 Americans died in

- 1 -

car crashes.[1]  The drastic reduction is, in large part, due to tremendous advances in vehicle occupant safety, including the widespread use of seatbelts and airbags.

3.     In order to prevent serious injury and death resulting from bodily impact with the hard interior surfaces of an automobile, sensors in the vehicle frame trigger the vehicle airbags to deploy upon impact.  Because collisions can be at high speed and the deceleration from impact is virtually immediate, to be effective, airbags must deploy effectively simultaneous to the moment of collision.  To accomplish this, the airbag triggers and wires are connected to the airbag systems with highly conductive metals, such as gold, and the airbag systems use small explosive charges to immediately inflate the airbags upon being triggered.  Takata's explosive charge components in its airbag systems were defectively manufactured since as early as 2001, and perhaps earlier.

4.     Rather than deploying the airbags to prevent injuries, the defective Takata airbag inflators quite literally blew up like hand-grenades, sending lethal metal and plastic shrapnel into the vehicle cockpit and into the bodies of the drivers and passengers.  In fact, in one otherwise non-catastrophic collision, responding police opened a homicide investigation because it appeared that the deceased driver had been stabled multiple times in the head and neck immediately before crashing her car.  In

---

[1] NHTSA 2020 Report, *available at*: http://www.nhtsa.gov/nhtsa/whatis/planning/2020Report/2020report.html.

truth and fact, the defective Takata airbag in the Honda vehicle had exploded and killed the driver by sending metal and plastic fragments into her body.

5.     Takata and Honda knew of the deadly airbag defect at least 13 years ago, but did nothing to prevent ongoing injury and loss of life.  Takata's first airbag defect recall stemmed from defective manufacturing in 2000, but was limited (by Takata) to a recall of select Isuzu vehicles.  In Alabama, in 2004, a Takata airbag in a Honda Accord exploded, shooting out metal fragments which gravely injured the driver.[2] Honda and Takata unilaterally deemed it "an anomaly" and did not issue a recall, adequately investigate themselves, or seek the involvement of federal safety regulators.[3]  Instead, they swept it under the rug:  Takata reportedly ordered engineers to destroy evidence of cracked inflators and kept making defective airbags; and Honda kept putting them in its vehicles while marketing them as highly safe and of high quality.

## II.     NATURE OF CLAIM

6.     Plaintiffs bring this action on behalf of themselves and on behalf of all persons similarly situated who purchased or leased Defective Vehicles manufactured, distributed, or sold by Honda, that contain airbags manufactured by Defendant Takata, for claims under federal and state law.  Plaintiffs, based on personal knowledge as to

---

[2] *See Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, NEW YORK TIMES, Sept. 11, 2014.

[3] *See id.*

- 3 -

their own acts, and upon information and belief as to all other matters, allege as follows:

7.     "Defective Vehicles" refers to all vehicles purchased or leased in the United States that have airbags manufactured by Defendant Takata and have been subject to an airbag-related warning or recall, including, but not limited to, the following vehicles:  2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-2011 Honda Element; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; 2005 Acura RL.  The term "Defective Vehicles" also includes all vehicles manufactured by Honda (which includes Acura vehicles) purchased or leased in the United States that have airbags manufactured by Defendant Takata and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects.

8.     Airbags are meant to inflate rapidly during an automobile collision.  The airbag's purpose is to cushion occupants during a crash and provide protection to their bodies so that they don't strike objects in the vehicle, such as the steering wheel, dash board, or windshield.  When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe.  And one of the central safety features of any motor vehicle is the airbag.

9.     The Defective Vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury during

- 4 -

accidents, violently explode and discharge into the passenger cabin metal debris and shrapnel.

10.     The manufacturing defect in Takata's airbags dates back to at least April 2000, when, according to one recall notice, some Takata airbags produced between April 2000 and September 2002, contained manufacturing defects.  Takata became aware of the defect at least as early as 2001 when the first recall was issued relating to the exploding Takata airbags in Isuzu vehicles.

11.     In 2004, a Takata and Honda learned about the dangerous propensities of their airbag systems when an airbag in a Honda Accord exploded in Alabama, shooting out metal shrapnel and severely injuring the car's driver.  Honda and Takata deemed the incident "an anomaly" and neither company issued a recall. Neither Honda nor Takata sought the involvement of federal safety regulators.  In fact, Honda did not tell regulators about this event until an inquiry into its 2009 Recall.

12.     In spite of its public representations that the 2004 incident was an anomaly, Takata subjected its airbag systems to secret testing that revealed the opposite.  In testing, Takata technicians learned the airbags were prone to chronic failure due to cracks in the steel casings that house the airbag inflation systems. Instead of sharing this information with the public, Takata executives chose to embark in a cover-up campaign, withholding the information from federal regulators and

- 5 -

ordering its technicians to destroy all data evidencing any housing defects, including video and computer backups of the test results.[4]

13.     The serious danger posed by the lethal Takata airbags was not disclosed to U.S. safety regulators until 2008, despite red flags raised by the 2001 Isuzu and 2004 Honda exploding airbag incidents.  Indeed, Honda received three additional reports of airbag rupture incidents in 2007, but never issued recalls or told U.S. safety regulators that the incidents involved exploding airbags.  In November 2008, Honda informed U.S. authorities that it had a problem with some of the Takata airbags installed in its vehicles.  However, at that time Honda recalled only 4,000 Honda Accords and Civics.

14.     In April 2009, six months after the limited 2008 recall, a Takata airbag in Florida resident Jennifer Griffin's Honda Civic exploded after a minor traffic accident.  The nearly-lethal explosion sent a two-inch piece of shrapnel from the airbag flying into Ms. Griffin's neck.  Although Ms. Griffin survived, when highway troopers found her, blood was gushing from a puncture in her neck.  Ms. Griffin's car was not part of the 2008 Recall.

15.     In May 2009, a Takata airbag killed 18-year-old Ashley Parham when her 2001 Honda Accord bumped into another car in a parking lot.  While she survived the

---

[4] *Takata Execs Ordered Technicians to Erase Air Bag Test Results: Report*, Reuters (Nov. 6, 2014) (available at: http://www.chicagotribune.com/business/breaking/chi-takata-air-bags-20141106-story.html) (last reviewed November 7, 2014).

- 6 -

accident itself, the metal shrapnel that shot out of the exploding Takata airbag sliced open her carotid artery and she bled to death.

16.     Ms. Parham's car was not one of those recalled six months earlier by Honda.

17.     Honda expanded its 2008 Recall to about 400,000 vehicles two months after Ashley Parham's death, summoning back additional 2001 and 2002 Acura, Civic, and Accord models, including the model driven by Ms. Parham.

18.     Recent events have revealed that Honda's recall did not cover nearly enough vehicles. First responders have been baffled by the fact that victims of apparently minor accidents suffered injuries more consistent with being shot or stabbed repeatedly.  For example, around July 2014, South Florida resident Claribel Nunez was involved in a crash while driving her 2001 Honda Civic.  While she survived the automobile accident, she was badly injured when a chunk of metal exploded from her car's Takata airbag into her forehead.  She survived, but now suffers from headaches, nausea, and loss of vision.

19.     On September 29, 2014, Florida resident Hien Tran died four days after her 2001 Honda Accord struck another car in Orlando and the Takata airbag exploded, projecting shrapnel into her neck.  The medical examiner stated that the shrapnel tore through the airbag, hitting Ms. Tran and causing "stab-type wounds" and cutting her trachea.  Her death was initially investigated as a homicide by detectives.  A week

- 7 -

after she died she received a letter in the mail from Honda urging her to get her car fixed because of faulty airbags that could explode.

20.     Despite the fact that they had a clear record of defects, both Takata and Honda delayed reporting the full extent of the danger to drivers and passengers and failed to issue appropriate recalls.  Both Honda and Takata provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more confusion and delay.  Indeed, the danger of exploding airbags and the number of vehicles affected was not disclosed for years after it became apparent there was a potentially lethal problem.  Instead, Takata and Honda repeatedly failed to fully investigate the problem and issue proper recalls, allowing the problem to proliferate and cause numerous injuries and at least four deaths over the last 13 years.

21.     It was not until 2013, four years after Honda first reported the problem to U.S. regulators, which itself was five years after that 2004 exploding Accord airbag in Alabama, that a more detailed recounting of Takata's safety failures was revealed. The full scope of the defects is yet to be determined.  More information about Takata's defective airbags continues to be uncovered today.  In fact, in mid-October 2014, Federal Prosecutors at the United States Attorneys' Office in New York opened an

- 8 -

investigation into the defective airbags and in particular, whether Takata made misleading statements about the safety of its airbags to U.S. Regulators.[5]

22.     Takata's own airbag manufacturing plants did not abide by Takata's internal safety rules.  In 2002, Takata's airbag manufacturing plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every one million airbag inflators shipped.

23.     Equally disconcerting, Takata misled at least one other car manufacturer to believe that its vehicles were not affected by Takata's defective airbags.  In 2010, Takata affirmatively assured BMW that its vehicles were not affected because BMW's airbags were manufactured on a different production schedule from Honda's.  It wasn't until 2013 that Takata finally admitted that BMW's airbags were in fact at risk of explosion.  Takata's actions thus aided in the delay of other car manufacturers issuing recalls on their vehicles with Takata airbags.

24.     In June 2014, NHTSA announced that BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota were conducting limited regional recalls to address a possible safety defect involving Takata brand airbag inflators.  The action was influenced by a NHTSA investigation into six reports of airbag inflator ruptures, all of which occurred in Florida and Puerto Rico.

---

[5] Christopher Matthews, *Takata Targeted by Federal Prosecutors Looking Into Whether Parts Maker Made Misleading Statements About Its Air Bag*, WALL STREET JOURNAL, Oct. 22, 2014.

25.     To date, over 14 million vehicles with Takata's airbags have been recalled worldwide, and there are reports that additional vehicles that have not yet been disclosed by the Defendants could join the list of recalls.  The large majority of those recalls have come only within the last year despite the fact that many of the vehicles were manufactured with a potentially defective and dangerous airbag over a decade ago.

26.     As a result of Takata's and Honda's misconduct, Plaintiffs and Class Members were harmed and suffered actual damages in that the Defective Vehicles have potentially deadly airbags that pose an ongoing threat to drivers and passengers and have diminished the value of the cars in which they are installed.  Plaintiffs and the Classes did not receive the benefit of their bargain as purchasers and lessees received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations.

27.     Class Members did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided.  A vehicle purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a car—such as the Defective Vehicles—that is known to contain a Takata airbag.  All purchasers of the Defective Vehicles overpaid for their vehicles.

010477-11  728937 V1

28.     Furthermore, the public disclosure of the defective Takata airbags has caused the value of the Defective Vehicles to materially diminish.  No reasonable, informed consumer would pay the same amount for a vehicle with a propensity to explode shrapnel into the driver's face as they would pay for the same vehicle without that defect.  Purchasers or lessees of the Defective Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the defects been disclosed.

29.     Worse still, the current recalls have done little to protect owners and lessees of Defective Vehicles from the urgent and ongoing threat posed by Takata airbags because there are not enough new airbags to replace the millions of recalled airbags.

30.     All owners or lessees of the Defective Vehicles have been strongly urged by the National Highway Traffic Safety Administration ("NHTSA") "to act immediately" on the recall notices to replace Takata airbags.  NHTSA reiterated that its recall message comes with "urgency" and that "[r]esponding to these recalls, whether old or new, is essential to personal safety."

31.     However, Takata is unable to manufacture enough new, safe airbags to replace the faulty airbags in the nearly eight million vehicles that are the subject of the

- 11 -

most recent recall. "There's simply not enough parts to repair every recalled single car immediately," said Chris Martin, a spokesman for Honda.[6]

32.    Even if there were enough airbags, dealers are unable to keep up with the volume of customers rushing to get their Takata airbags replaced. Some dealers have reported receiving up to 900 calls per day about the recalls and are telling customers that they may have to wait months before air bags can be replaced.

33.    Instead of replacing the airbags, some dealers are either disabling airbags, leaving customers with vehicles that are unsafe to drive, or are advising customers to not drive vehicles with Takata airbags until the airbags can be replaced. As a result, consumers have lost use of their vehicles as a reasonable reaction to the revelation of their vehicles' defects.

34.    Plaintiffs and Class Members are either left with unsafe vehicles or no vehicle at all. At this time, automakers are not offering customers the use of loaner vehicles.

35.    Congress is also concerned with this serious problem and has questioned the legality of automaker's responses. U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), expressed their consternations about "a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting

---

[6] Hiroko Tabuchi and Christopher Jensen, *It Looked Like a Stabbing, but Takata Airbag Was the Killer*, N.Y. TIMES, Oct. 20, 2014.

passengers in the front seat if replacement parts for these airbags are unavailable.  As a matter of policy, this step is extraordinarily troubling and potentially dangerous.  As a matter of law … § 30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption. We are unaware of an exemption from your office in the case of Takata airbags."[7]

36.    Equally important, the Senators said, is that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[8]  "[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts."[9]

37.    As these Senators have recognized, there is an immediate need to provide safe vehicles for Plaintiffs and Class Members.  Otherwise, many may be left without a vehicle to take them to and from work, to be able to pick up their children from school or childcare, or, in the most urgent situations, a vehicle to transport themselves or someone else to a hospital.

---

[7] *Id.*

[8] *Id.*

[9] *Id.* (emphasis added).

- 13 -

### III.   JURISDICTION AND VENUE

38.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Classes are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

39.     This Court also has jurisdiction to decide claims brought under 15 U.S.C. § 2301 (the Magnuson-Moss Act) by virtue of 28 U.S.C. § 1332 (a)-(d).

40.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants because Defendant Honda American Motor Co., Inc. is headquartered in this Judicial District, Defendants conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this District.

41.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to Class Members residing in this District, and the Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this district.

- 14 -

## IV.   THE PARTIES

**A.   Plaintiffs**

### 1.   Richard Klinger

42.   Plaintiff and proposed Nationwide and California Class Representative Richard Klinger is a resident of Sherman Oaks, California.  Mr. Klinger purchased a used 2003 Honda Civic hybrid in 2006 in a private sale in Los Angeles, California for approximately $15,500.  The car was in pristine condition when he bought it, with only 27,000 miles.  The airbags were also original, but have since been replaced under the recall.  Safety, fuel economy, and dependability all played a large part in his decision to buy the Honda Hybrid.  As a labor law expert and consultant, Mr. Klinger must drive his vehicle regularly to attend hearings for work.

43.   Mr. Klinger learned about the recalls in late October 2014, after reading an L.A. Times article.  He immediately called his local dealership, Miller Honda in Sherman Oaks, and they instructed him to bring his car in right away to check his airbags.  Miller Honda performed a free diagnostic test, and informed Mr. Klinger that both the driver and passenger airbags needed to be replaced.  But they told him they needed to keep the car for seven to ten days before the parts would be available and the labor completed.  They also refused to provide a loaner vehicle or pay for Mr. Klinger to rent one while he awaited the repairs.  Because he refuses to drive around in an unsafe vehicle, Mr. Klinger told the Honda representatives that he would get a rental and would bill the dealership for it.  He is driving the rental currently.

- 15 -

44.     While he has enjoyed his vehicle previously, because of these defective airbags, Mr. Klinger is now apprehensive about driving it and mistrustful of the car and its manufacturer.  The replacement of his airbags has not eased these feelings.  Mr. Klinger also believes the value of his Honda has declined as a result of this dangerous defect.

### 2.     Kaiulani Muna

45.     Plaintiff and proposed Nationwide and California Class Representative Kaiulani Muna is a resident of Whittier, California.  She purchased a 2007 Honda Accord new in 2007 from Norm Reeve's Honda Superstore in Cerritos, California.  Her vehicle still has its original airbags.  Ms. Muna had purchased Hondas twice before because of Honda's reputation for safety.  She chose the 2007 Honda Accord because safety was still important to her in selecting a vehicle and she relied on the Honda Accord's ongoing reputation for safety.  Norm Reeve's Honda Superstore represented that Honda had excellent safety features.  She uses her Honda to run personal errands and commute 25-30 miles to work.  She spends between two and three hours per work-day in the car.

46.     In October 2014, Ms. Muna was sent an article by her mother informing her that there had been a recall on her vehicle due to faulty airbags.  Ms. Muna did not personally receive a recall notice from Honda.  Ms. Muna contacted the nearby Honda dealership, Whittier Community Honda and inquired whether her vehicle was being recalled.  They told her that it was.  When she asked if they had the parts in store, the

- 16 -

dealership told her that she must visit the dealership to find out. When she visited the

dealership, the service manager told her that they would not be able to furnish the

correct parts for a week.  However, it has been longer than a week and the dealership

has not contacted her with the spare parts.

47.     Ms. Muna has stopped using her vehicle for any uses other than to

commute to work.  She now relies on others to help her run errands.  Her gravest

concern is that the airbag will explode and injure her or a passenger, but she is also

concerned that she has lost some of the resale value of the vehicle.

**3.     Robin Spence**

48.     Plaintiff and proposed Nationwide and Florida Class Representative

Robin Spence is a resident and citizen of Miramar, Florida.  Ms. Spence and her

husband purchased a new 2004 Honda Accord in November or December 2003 from

Rick Case Honda in Davie, Florida for approximately $29,000-$30,000.

Approximately four months ago, they purchased a certified, pre-owned 2011 Honda

Pilot from the Honda dealership at the Coral Springs Auto Mall in Coral Springs,

Florida for $22,155.  Both vehicles still have their original airbags.  Safety and

reliability were the primary factors in the Spences' decision to purchase these Honda

vehicles.  The Spences believed the Honda brand was at the top of its class in

manufacturing safe and long-lasting cars.  When they purchased the new Accord, Ms.

Spence says the dealership "promised them everything under the moon" with regard to

safety and reliability.  When they purchased the used Pilot, the dealership again

- 17 -

promised them the utmost safety and reliability based on Honda's certified pre-owned designation. Mr. Spence typically drives the Accord, while Ms. Spence drives the Pilot.

49.     Last week, Ms. Spence read about the Takata airbag recalls online at CNN's website.  She was particularly horrified to learn that Honda and Takata knew about this dangerous defect for many years prior to initiating the recalls.  Ms. Spence immediately called her Honda dealership to inquire about the recalls' effect on her vehicles.  The dealership service department told her both cars were being recalled, but that the replacement parts were backordered and not expected to arrive until March 2015.  Ms. Spence was distraught by this delay because she regularly transports her two-year-old in the Pilot.  She is also pregnant with her second child and due to give birth in March 2015.  Aside from the safety concerns, taking the cars to the dealership for repair will be difficult to manage while the Spences have a newborn and a toddler at home.  Ms. Spence also confirmed that both vehicles were being recalled by checking the vehicle identification number ("VIN") on Honda's website.  Ms. Spence is concerned for her family's safety while driving these vehicles.  She also believes the value of their Hondas have declined as a result of this dangerous defect.

### 4.     Suketu Dalal

50.     Plaintiff and proposed Nationwide and New Jersey Class Representative Suketu Dalal is a resident and citizen of Edison, New Jersey.  Mr. Dalal purchased a new 2005 Honda Accord on March 26, 2005, from Open Road Honda in Edison, New

- 18 -

Jersey for $20,922.46.  His vehicle still has its original airbags.  Mr. Dalal chose the Honda Accord because safety was very important to him in selecting a vehicle. Before purchasing, he reviewed Consumer Reports articles and saw that the Accord was one of the highest rated and safest vehicles on the road.  The Honda dealership where he purchased the car also told him the Accord was very reliable and had all the top safety features.

51.    In October 2014, Mr. Dalal heard on his local news radio about Takata airbag defects.  This prompted him to go online and check his vehicle identification number ("VIN") to see if his car was included in the recalls.  When he saw that it was not being recalled, despite the fact that his model is listed as potentially affected on NHTSA's website, he called his local Honda dealership to inquire further.  The dealer told him his car was not being recalled at this time because it is not in a high humidity state.  They declined to offer him any remedies to ease his safety concerns, such as a loaner vehicle, but rather seemed more interested in knowing how Mr. Dalal learned of the defective airbags and recalls.  The dealership also refused to confirm whether or not Takata-brand airbags were in Mr. Dalal's car.  Because he fears for his safety when driving his car, and particularly because his regular commute via highway Route 1 is riddled with accidents, Mr. Dalal stopped driving his car altogether.  Mr. Dalal believes the value of his vehicle has diminished as a result of these defective parts.

010477-11  728937 V1

### 5.     Anthony Palmieri

52.     Plaintiff and proposed Nationwide and New York Class Representative Anthony Palmieri is a resident and citizen of Brooklyn, New York.  Mr. Palmieri purchased a used 2005 Honda Accord in 2009 for approximately $10,000.  Mr. Palmieri purchased the car from a friend who only owned the vehicle for a few years after buying it new in 2005.  Mr. Palmieri bought the car from him, in part, because he planned to start wintering in Florida for two to three months out of the year and he needed a vehicle he could drive down and use during his stay.

53.     In October 2014, Mr. Palmieri learned about the Takata airbag recalls after reading an online news story and then hearing more about it on television.  According to the news stories, his vehicle model was implicated in the recalls.  This prompted him to call the customer service phone number on Honda's website and speak to a representative.  The representative informed Mr. Palmieri that his vehicle was not being recalled because he lives in New York.  He told her he intended to spend several months in Florida with his vehicle this winter, which will put him at risk.  When he asked where his vehicle was manufactured, the representative refused to say, claiming she had no way to determine such information.  He then asked about having his car inspected to determine which airbags it contained.  The representative said it could only be done at Mr. Palmieri's expense, and even if the inspection confirmed that his vehicle contains Takata airbags, Honda would not cover their replacement because his car has not been recalled.  Because of these dangerously

- 20 -

defective airbags, Mr. Palmieri is afraid to drive his car and has limited his driving. He no longer plans to drive the car to Florida this winter, and he says he would not have purchased the car had he known about the defective airbags it contains. Mr. Palmieri believes the value of his vehicle has diminished as a result of these defective parts.

### 6. Lyle Moore

54. Plaintiff and proposed Nationwide and Ohio Class Representative Lyle Moore is a resident and citizen of Pataskala, Ohio. Mr. Moore purchased a new 2006 Honda Ridgeline on November 11, 2005, in Heath, Ohio for $27,589. The vehicle still has its original airbags. Mr. Moore purchased his vehicle, in part, because he desired a safe and reliable car. Since the time he purchased the vehicle in 2005, Mr. Moore and his family have driven it down to Florida a few times for vacation, staying for approximately three to four weeks each time.

55. In October 2014, Mr. Moore learned about the defective airbags while reading the Columbus Dispatch. Although his vehicle was listed as a recalled model, he was upset to learn that his vehicle was not likely a part of the recall simply because he resides in Ohio. He confirmed this by checking his vehicle identification number ("VIN") on Honda's website. Mr. Moore is concerned about the safety of driving the vehicle with defective airbags, and his wife also feels unsafe in the car. He believes the value of his Honda has declined as a result of this dangerous defect.

- 21 -

### 7.   Kathryn Tillisch

56.     Plaintiff and proposed Nationwide and Virginia Class Representative Kathryn Tillisch is a resident and citizen of South Riding, Virginia.  Ms. Tillisch purchased a new 2005 Honda Pilot on February 26, 2005, from Rosenthal Honda in Vienna, Virginia for $25,844.  Her vehicle still has its original airbags.  Ms. Tillisch's primary reason for purchasing the vehicle was based on its safety ratings, and she did substantial personal research on this issue.  Using the compare feature on Edmunds.com, Ms. Tillisch assessed the 2005 Honda Pilot's features against those of similar models, such as the 2005 Ford Explorer, 2005 Mitsubishi Endeavor, 2005 Nissan Murano, and 2005 Toyota Highlander.  The 2005 Pilot received "Excellent" ratings in driver, passenger, and side-impact front and rear crash tests.  Ms. Tillisch also reviewed a December 2004 Honda Frontline article touting the 2005 Pilot's superior features to those of the 2005 Toyota Highlander.  The article notes the Pilot was a "superior recommendation" and "'Best Pick' in frontal safety" by the Insurance Institute for Highway Safety.

57.     Sometime over the last several months, while doing recall research on her vehicle, Ms. Tillisch came across two letters dated June 19, 2014, from Honda to the National Highway Traffic Safety Administration ("NHTSA") discussing Honda's investigation into defective Takata airbags.  She decided to continue monitoring updates on this defect, and on or around October 20, 2014, NHTSA issued a consumer advisory with an affected vehicle list that included Ms. Tillisch's car.  Then, on

- 22 -

October 22, 2014, NHTSA issued an updated consumer advisory urging vehicle owners with defective airbags to take immediate action.  Prompted by these warnings, Ms. Tillisch checked her vehicle identification number ("VIN") on Honda's website and noted no outstanding recall.  She attempted to check the VIN again later after she saw the updated advisory warning, but the Honda site was unresponsive.

58.     Ms. Tillisch then called Honda of Tysons in Vienna, Virginia, the dealership where she purchased the Pilot, and left a message.  They never returned her call.  On October 23, 2014, Ms. Tillisch called a different Honda dealership, Joyce Koons Honda.  She spoke with a representative, explaining to him her safety concerns and continued frustration with checking her VIN on the Honda website.  She also expressed concern at the fact that her 2005 Honda Pilot appeared to be included in the urgent NHTSA advisory warning, but was nonetheless being excluded simply for geographical reasons.  The representative checked her VIN and confirmed that her particular vehicle was not being recalled.  He commented that she could "rest easy" knowing her car wasn't recalled, when in fact this left her more uneasy about her safety.  He also said her vehicle was manufactured in January 2005 and that the defective airbags were in 2003, 2004, and early 2005 models, and encompassed certain VIN ranges.  Ms. Tillisch specifically and emphatically told the representative that her car was now permanently parked in her garage in light of these findings, and that without new airbags she was uncomfortable driving it.  After being placed on hold, the representative told her the cost of replacing the airbags was $1,087 for the

- 23 -

driver-side airbag, and $1,110 for the passenger-side airbag.  The next day she filed a complaint with NHTSA.  In addition to her safety concerns, Ms. Tillisch believes the defective Takata airbags have depreciated the resale value of her Honda Pilot.

### 8. Robin Holt

59.     Plaintiff and proposed Nationwide and Washington Class Representative Robin Holt is a resident and citizen of Kent, Washington.  Ms. Holt purchased a new 2004 Honda Element on January 21, 2005, from Kaiser Brothers Honda in Los Angeles, California for $19,374.64 in cash.  The vehicle still has its original airbags. Safety was the main reason Ms. Holt purchased the Honda Element.  She wanted a safe, reliable vehicle that would hold its value.

60.     Approximately two months ago, the vehicle's airbag light went off. When Ms. Holt called Renton Honda in Washington about the issue, the dealership mentioned an airbag recall but said a list of affected vehicles had not been finalized and they could not confirm whether her vehicle was recalled.  This prompted Ms. Holt to research the issue online by entering her vehicle identification number ("VIN") on Honda's website.  She discovered her vehicle had been recalled, although she did not receive a recall notice.  When Ms. Holt called the dealership back about her findings, they said they had the authority to order parts, but not to replace her airbags.  Because she never heard back from the dealership about receipt of the new airbags or a timeline for installing them in her Honda, Ms. Holt called Honda's corporate phone number and asked about replacing her airbags.  They declined to give her answer and merely

- 24 -

provided her with another 1-800 phone number to call.  A few days ago, Ms. Holt called Renton Honda again and they told her the new airbags were on backorder and that they would call her as soon as the parts arrived.

61.     Ms. Holt often uses her vehicle to drive an elderly woman to doctor's appointments, grocery stores, and for other errands. She now fears for the safety of her passenger, as well her own safety.  She believes the value of her Honda has declined as a result of this dangerous defect and that she would have difficulty re-selling it.

## B.     Defendants

62.     Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Honda Motor manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

63.     Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California.  American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, and sport utility vehicles automobile parts in the United States.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana, East Liberty, Ohio, Lincoln, Alabama, and Marysville, Ohio.

- 25 -

64.     Defendants Honda Motor and American Honda are collectively referred to as "Honda" or "Honda Defendants."  Honda vehicles sold in the United States contain airbags manufactured by the Takata Defendants.  NHTSA has recalled to date the following Honda vehicles for having faulty Takata airbags, totaling 5,051,364 vehicles:  2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-2011 Honda Element; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; and 2005 Acura RL.

65.     Defendant Takata Corporation ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes, and sells airbags.  Takata is a vertically-integrated company and manufactures component parts in its own facilities.

66.     Defendant TK Holdings Inc. ("TK Holdings") is a subsidiary of Takata Corporation headquartered in Auburn Hills, Michigan.  TK Holdings sells, designs, manufactures, tests, markets, and distributes airbags in the United States.  TK Holdings both directly and through subsidiaries, owns and operates 56 manufacturing plants in 20 countries.  TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation.

67.     Highland Industries, Inc. ("Highland") is a subsidiary of Takata Corporation and is headquartered in Greensboro, North Carolina.  Highland

- 26 -

manufactures industrial and automotive textile product solutions including airbag fabrics for the automotive airbag industry. Highland manufactures airbags in the United States, including airbags at issue in this litigation.

68.     Defendants Takata, TK Holdings, and Highland are collectively referred to as "Takata" or "Takata Defendants."  Takata is the manufacturer of all the faulty airbags recalled by NHTSA that are the subject of this Complaint.

## V.     FACTUAL ALLEGATIONS

### A.     Takata is a Major Manufacturer of Airbags and Inflators

69.     Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata was a pioneer in developing driver side airbags, being the first to market driver side airbags in the early 1980s. Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.

70.     Airbags made up 37.3% of Takata's automotive safety products business in 2007.

71.     Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

72.     The airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted when deployed.  The redesigned airbags are inflated by

- 27 -

means of an explosive based on a common compound used in fertilizer.  That explosive is encased in a metal canister.

73.    The two Takata plants that manufactured the airbags at issue in this Complaint are located in Moses Lake, Washington and Monclova, Mexico.  These plants also manufacture airbag inflators.

74.    Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least ten different automakers, including Honda.

75.    Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream."[10] They claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[11]  Takata has failed to live up to its dream by:  (1) manufacturing, distributing, and selling airbags that can cause serious bodily injury or death; and (2) by hiding the fact of its defective airbags from U.S. regulators and from the public at large.

**B.    Honda Field Reports and Takata Internal Testing Reveal a Problem**

76.    Takata has known since at least 2001 that Takata airbags, and particularly the inflator component, were defective, as Isuzu was forced to make a recall that year due to exploding Takata airbags.

---

[10] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.

[11] *Id.*

- 28 -

77.     In 2004, a Takata airbag violently exploded in a Honda Accord, shooting out metal fragments and injuring the car's driver.  At a loss to explain the incident, Honda and Takata deemed it "an anomaly" and did not issue a recall or seek the involvement of federal safety regulators.[12]

78.     Despite Takata's public representations, Takata subjected its airbags to secret testing shortly after the 2004 incident. The testing revealed that the steel canisters used to house the airbag's rapid-inflation system contained cracks that compromised its structural integrity. Upon learning that information, Takata ordered its technicians to destroy all evidence of the test results, including video footage, and computer backup files.[13]

79.     In June and August of 2007, Honda notified Takata of three additional airbag explosion incidents.  All three involved defective airbags exploding metal fragments into the faces, necks, and limbs of car passengers upon deployment of the airbags.  These incidents triggered an internal investigation by Takata, including a survey of inflators.

---

[12] Hiroko Tabuchi, *Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, N.Y. TIMES (Sept. 11, 2014).

[13] *Takata Execs Ordered Technicians to Erase Air Bag Test Results: Report*, Reuters (Nov. 6, 2014) (available at: http://www.chicagotribune.com/business/breaking/chi-takata-air-bags-20141106-story.html) (last reviewed November 7, 2014).

80.     Honda settled financial claims with the individuals injured by the airbags. But rather than investigate fully, or disclose the fact of these airbag incidents, the settlements were kept confidential.

81.     Honda filed a standard report with U.S. safety regulators on the initial air bag injury in 2004, and followed up with similar filings on the incidents in 2007.  But Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents:  that the airbags posed a substantial risk of serious injury or death when deployed.

**1.     2008:  Recall 08V593.**

82.     Takata shared the results of the inflator survey analysis with Honda in November of 2008.  That analysis indicated an airbag inflator issue.  The results triggered a Honda recall, but for only about 4,200 of its vehicles.  This recall occurred over four years after the first reported airbag explosion incident in a Honda car.

83.     The November 2008 Recall involved certain 2001 Honda Accord and Civic vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").[14]  Honda replied that it learned of the problem via a June 2007 claim.

---

[14] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.

**2.     2009: Recall 09V259.**

84.     In June 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the "improper inflator performance."

85.     Honda subsequently received two more claims of "unusual deployments," Ms. Parham's May 28, 2009, accident and another in June 9, 2009.

86.     As a result of Takata's June 2009 follow up report and the additional claims of "unusual deployments," on June 30, 2009, Honda expanded the recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").

87.     In August 2009, NHTSA Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[15]

88.     NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V -593 recall population."[16]

---

[15] Aug. 19,2009 Letter from NHTSA to American Honda Motor Co.
[16] *Id.*

- 31 -

89.     NHTSA Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.[17]

90.     In Honda's September 2009 reply to NHTSA, the automaker said that its information about the "unusual deployments" came from Takata:  "We understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[18]

91.     Honda also reported, based on information from Takata, the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators."  Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "one production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.[19]

92.     Honda also disclosed to NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls.  Honda also, for the first time, told NHTSA about the 2004 incident involving an "unusual deployment" of the vehicles airbag.  Honda falsely claimed that it "only recently were reminded of this incident,"

_____

[17] *Id.*

[18] Sept. 16, 2009 Letter from Honda American Motor Co. to NHTSA, at 1.

[19] *Id.* at 1.

- 32 -

and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[20]

93.     At least four complaints have been submitted to NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

### 3.     Takata's Contact with NHTSA.

94.     In its communications with NHTSA, Takata continually gave misleading or incorrect information about the airbags it manufactured that were part of the recalls.

95.     On November 20, 2009, NHTSA requested information from Takata as part of their ongoing investigation into the airbag inflators that triggered the 2009 Recall.

96.     Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response").  Both responses provided vague and misleading information about the seriousness of the problem.

97.     In both responses, Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls.  However, in the Full Response, Takata states that there were, in fact, differences in the production processes between the lots.

---

[20] *Id*. at 4.

- 33 -

98.    In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  They claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000, and December 1, 2000.  They also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000, and February 25, 2001.

99.    Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata admitted, its records did not have that information.  Instead, they gave just the manufacturing dates.

100.   In both the Partial Response to NHTSA on December 23, 2009, and the Full Response on February 19, 2010, Takata stated that:  "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 to any customers other than Honda.  The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda."[21]  This statement would prove to be untrue.

101.   In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

---

[21] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA, at 2.

- 34 -

102.   In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant.  Takata further asserted that while they did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-related defect."[22]

103.   Takata wrote in its Full Response that it "believed - [redacted] - that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12, 2009."[23]

104.   Both Honda and Takata represented to the public and NHTSA that the total number of affected vehicles was quite small.

**4.     2010:  Recall 10V041.**

105.   In 2010, merely months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2CL vehicles,

---

[22] Feb. 19, 2010 Letter from Takata to NHTSA, at 5.

[23] *Id*. at 11-12.

- 35 -

while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010 Recall").

106.   Honda's explanation for the airbag defects changed yet again.  Honda explained that there are two different manufacturing processes utilized in the preparation of an airbag propellant.  While one process is within specification, the other is not.  Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

### 5.   2011:  Recall llV260.

107.   In April 2011, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions ("2011 Recall").

### 6.   2013: Recall 13V132.

108.   By 2013, it became clear that the defective airbag issue was far more widespread than Takata or Honda initially reported to NHTSA.

109.   According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible."  Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

110.   On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  Honda stated:

- 36 -

A recreation of propellant production using the same
methods as were used during 2001-2002 production periods
indicated that it was possible for propellant produced during
2001-2002 to be manufactured out of specification without
the manufacturing processes correctly identifying and
removing the out of specification propellant.  Separately,
Honda was informed by the supplier of another potential
concern related to airbag inflator production that could affect
the performance of these airbag modules.[24]

111.   On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for

their 2001-2003 Civic, 2002-2003 CR-V, and their 2002 Odyssey vehicles with

NHTSA.  In that notification, Honda asserted that 561,422 vehicles could be affected

by the following part defect:

**Defect description:**

In certain vehicles, the passenger's (frontal) airbag inflator
could produce excessive internal pressure.  If an affected
airbag deploys, the increased internal pressure may cause the
inflator to rupture.  In the event of an inflator rupture, metal
fragments could be propelled upward toward the windshield,
or downward toward the front passenger's foot well,
potentially causing injury to a vehicle occupant.[25]

112.   On April 11, 2013, Takata filed a Defect Information Report titled

"Certain Airbag Inflators Used as Original Equipment" ("Takata DIR").  In that

report, Takata identified the defective airbags as follows:

Certain airbag inflators installed in frontal passenger-side
airbag modules equipped with propellant wafers
manufactured at Takata's Moses Lake, Washington plant
during the period from April 13 2000 (start of production)
through September 11, 2002 … and certain airbag inflators
manufactured at Takata's Monclova, Mexico plant during

---

[24] April 10, 2013 Letter to NHTSA, at 2-3.

[25] *Id*. at 2.

- 37 -

the period from October 4, 2001 (start of production) through October 31, 2002....[26]

113.   It wasn't until its April 2013 Report that Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[27]

114.   Takata asserted that it did not know how many inflators were installed in vehicles, as it did not have those records.[28]  While it did not have the information to estimate the number of vehicles affected, Takata still insisted that the total number of installed inflators would be extremely low.

115.   Takata described the defect as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force....  In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture conditions. These wafers could have absorbed moisture beyond the allowable limits ....  In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment.  This could create excessive internal pressure within the inflator and the body of the inflator could rupture.[29]

---

[26] Takata April 11, 2013 DIR at 3.

[27] *Id*. at 2-3.

[28] *Id*. at 3.

[29] *Id*. at 3-4.

- 38 -

### C.     Recalls and Notices Relating to Defective Airbag Inflators in Non-Honda Vehicles

116.   In April 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of 3.6 million vehicles containing Takata airbags.

117.   Chrysler and Ford similarly announced limited regional NHTSA recalls for vehicles originally sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands, and equipped with Takata airbag inflators.

118.   On October 22, 2014, NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.  Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles), and Toyota (877,000 potentially affected vehicles).[30]

---

[30] Ben Klayman, *U.S. regulators expand number a/vehicles affected by Takata recalls*, REUTERS (Oct. 22, 2014), *available at* http://www.reuters.com/article/20 1411 0122/us-autos-takata-warning-idUSKCNOIB03B20 141 022.

- 39 -

119.   Over the past 13 years that Takata has known there was a problem with the safety of their airbags, there have been at least four deaths and 139 injuries linked to defective Takata airbags.

**D.     Takata Fails to Meet Safety Standards and Maintain Airbag Quality**

120.   As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process.  Based on internal Takata documents, Takata was unable to meet its own standards for safety ***up until at least 2011***.[31]

121.   Despite all the theories proposed by Takata to federal regulators as to the sources of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds, and even chewing gum dropped into at least one inflator as reasons for the defects.  The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

**E.     Federal Investigations**

122.   NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that time were improperly sealed.[32]

---

[31] Joanna Zuckerman Bernstein, Ben Klayman, and Yuko Kubota, *Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal*, Reuters, Oct. 17, 2014, *available at* http://www.reuters.com/article120 1411 0118/us-takata-airbags-idUSKCN0I70 1B20 141 0 18.

[32] Klayman, *supra* n.29.

- 40 -

123.   In a Consumer Advisory dated October 22, 2014, NHTSA said:

> The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to **act immediately on recall notices to replace defective Takata airbags**. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.[33]

124.   The U.S. Department of Justice has reported that it is investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.

**F.     Honda Has Failed to Provide Honda Owners Whose Cars have Defective Takata Airbags with Replacement Parts or Vehicles**

125.   In a statement from Honda regarding Airbag Inflator Regional Safety Improvement Campaigns, dated October 22, 2014, Honda announced:

> If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components.

126.   However, Honda has acknowledged that it would not send out recall letters to car owners or lessees until there are parts available, meaning that many drivers would not receive notices for weeks or longer as they continue to drive vehicles with potentially deadly airbags or discontinue using their vehicles altogether.

---

[33] Emphasis added.

- 41 -

127.   Authorized dealers are experiencing a severe shortage of parts to replace the faulty airbags.  Dealers have been telling frustrated car owners to expect to wait many months before their airbags can be replaced.  Honda owners who have received recall notices have been told to wait at least a month before their authorized dealer has availability to assess their vehicle.[34]

128.   In fact, customers are put in potentially dire situations because replacement airbag parts are not available in the quantities demanded by those affected by the millions of recalls.  At this time, automakers are not offering customers loaner cars to use until their airbags can be replaced.

129.   Congress is also concerned with this serious problem.  U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), "urge[d] [the DOT] to provide clear guidance regarding [NHTSA's] October 21st Consumer Advisory about potentially defective Takata airbags."[35]

130.   The Senators expressed their belief "that NHTSA should immediately issue a nation-wide safety recall on all the affected cars, regardless of where the car is registered.  NHTSA's October 21, 2014 Consumer Advisory provided "no factual

---

[34] Jeff Harrington, *Tampa Bay auto dealers warn of delays to replace defective airbags*, TAMPA BAY TIMES, October 21, 2014, *available at* http://www.tampabay.com/news/business/autos/tampa-bay-auto-dealers-warn-ofdelays-to-replace-defective-airbags/2203132.

[35] Oct. 23, 2014 Letter from U.S. Senators Richard Blumenthal and Edward J. Markey to the U.S. Dept. of Transportation, at 1.

- 42 -

basis for distinguishing between states or regions of the country regarding the potential severe danger of this defect to motorists.  All state experience seasons of heat and humidity … Replacement parts are, 'essential to personal safety,' for all drivers whether they live in New England or Florida, and the NHTSA should immediately issue a nation-wide recall that protects all drivers."[36]

131.   The Senators said that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[37]  "[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts."[38]

132.   Plaintiffs and Class Members are now left in the position of either being without a vehicle or driving a vehicle that does not have an operable airbag for months at a time.  They are left without a vehicle to take them to work, to pick up their children at school or childcare, or, more urgently, a vehicle for emergency situations. Plaintiffs and Class Members must also take time away from work and other important obligations to take their vehicles to the repair shop when replacement parts do become available.

---

[36] *Id.* at 2.

[37] *Id.*

[38] *Id.* (emphasis added).

- 43 -

# VI.   TOLLING OF THE STATUTE OF LIMITATIONS

## A.   Fraudulent Concealment

133.   Upon information and belief, Defendant Takata has known of the defects in its airbags since at least 2001.  Defendant Honda has known of the defects in the Takata airbags in Honda's vehicles since 2004.  Defendants knew well before Plaintiffs and Class Members purchased the Defective Vehicles, and have concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the defects.

134.   Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

135.   Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

# VII.   CLASS ACTION ALLEGATIONS

136.   The Classes' claims all derive directly from a single course of conduct by Honda and Takata.  This case is about the responsibility of Honda and Takata, at law and in equity, for their knowledge, their conduct, and their products.  Honda and Takata have engaged in uniform and standardized conduct toward the Classes.  They did not differentiate, in degree of care or candor, their actions or inactions, or in the

- 44 -

content of their statements or omissions, among individual Class Members.  The

objective facts on these subjects are the same for all Class Members.  Within each

Claim for Relief asserted by the respective Classes, the same legal standards govern.

Additionally, many states share the same legal standards and elements of proof,

facilitating the certification of multi-state classes for some or all claims.  Accordingly,

Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all

other persons similarly situated as members of the proposed Class pursuant to Federal

Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4).  This action

satisfies the numerosity, commonality, typicality, adequacy, predominance, and

superiority requirements of those provisions.

## A.      The Nationwide Consumer Class

137.   Plaintiffs bring this action and seeks to certify and maintain it as a class

action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil

Procedure on their own behalves and on behalf of a Nationwide Consumer Class

defined as follows:

> All persons who entered into a lease or purchased one or
> more Defective Vehicles in the United States.

## B.      The State Consumer Classes

138.   Plaintiffs allege statewide class action claims on behalf of the following

classes in the following states ("State Classes").  Each of these State Consumer

Classes is initially defined as follows:

- 45 -

All persons who entered into a lease or purchased one or more of the Defective Vehicles in the State of California (the "California Class").

All persons who entered into a lease or purchased one or more of the Defective Vehicles in the State of New Jersey, excluding those who purchased vehicles for an exclusively commercial purpose (the "New Jersey Class").

All persons who entered into a lease or purchased one or more of the Defective Vehicles in the State of New York (the "New York Class").

All persons who entered into a lease or purchased one or more of the Defective Vehicles in the State of Virginia (the "Virginia Class").

139.   The Nationwide Consumer Class, the State Consumer Classes, and their members are sometimes referred to herein as the "Class" or "Classes."

140.   Excluded from each Class are Takata and Honda, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Takata and Honda; and the judicial officers and their immediate family members and associated court staff assigned to this case.

141.   Also excluded are consumers who suffered a personal injury as a result of the Defective Vehicles and consumers who purchased vehicles exclusively for commercial use.

## C.   Numerosity and Ascertainability

142.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiffs are informed and believe that there are millions of Defective Vehicles nationwide, and thousands of Defective Vehicles in each of the States.  Individual joinder of all Class Members is impracticable.

- 46 -

143.   Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Takata and Honda or third-parties in the usual course of business and within their control.  Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**D.     Predominance of Common Issues**

144.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class Members.  These include, without limitation, the following:

(a)     Whether the Defective Vehicles suffer from airbag defects;

(b)     Whether the Defective Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

(c)     Whether Defendants knew or should have known about the airbag defects, and, if yes, how long Defendants have known of the defects;

(d)     Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle;

(e)     Whether Defendants had a duty to disclose the defective nature of the Defective Vehicles to Plaintiffs and Class Members;

(f)     Whether Defendants omitted and failed to disclose material facts about the Defective Vehicles;

(g)     Whether Defendants' concealment of the true defective nature of the Defective Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Defective Vehicles;

(h)     Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppels;

(i)     Whether Defendants misrepresented that the Defective Vehicles were safe;

(j)     Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbag inflators;

(k)     Whether Defendants' conduct, as alleged herein, likely to mislead a reasonable consumer;

(1)     Whether Defendants' statements, concealments and omissions regarding the Defective Vehicles material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

- 48 -

(m)   Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

(n)   Whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

(o)   Whether Plaintiffs and the Classes are entitled to a declaratory judgment stating that the airbag inflators in the Defective Vehicles are defective and/or not merchantable;

(p)   Whether Defendants' unlawful, unfair, and/or deceptive practices harm Plaintiffs and the Classes;

(q)   Whether Defendants have been unjustly enriched by their conduct;

(r)   Whether Plaintiffs and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(s)   Whether Defendants should be declared responsible for notifying all Class Members of the defects and ensuring that all vehicles with the airbag inflator defect are promptly recalled and repaired;

(t)   What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy; and

(u)   How such penalties should be most equitably distributed among Class Members.

- 49 -

**E.    Typicality**

145.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class Members, and arise from the same course of conduct by Takata and Honda.  The relief Plaintiffs seek is typical of the relief sought for the absent Class Members.

**F.    Adequate Representation**

146.   Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

147.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**G.    Superiority**

148.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for Takata and Honda; and because adjudication with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members, or impair substantially or impede their ability to protect their interests.

- 50 -

149.   Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

150.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants Takata and Honda have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

151.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The common questions of law and of fact regarding Takata's and Honda's conduct and responsibility predominate over any questions affecting only individual Class Members.

152.   Because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, such that most or all Class Members would have little or no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even

- 51 -

a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

153.   The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

154.   Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.  The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multi state classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

155.   The Classes expressly disclaim any recovery in this action for physical injury resulting from the airbag inflator defects without waiving or dismissing such claims.  Plaintiffs are informed and believe that injuries suffered in crashes as a result of the defective airbags implicate the Defective Vehicles and are continuing to occur because of Defendants' delays and inaction regarding the commencement and completion of recalls.  The increased risk of injury from the airbag defects serves as an independent justification for the relief sought by Plaintiffs and the Classes.

## VIII.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### ON BEHALF OF THE NATIONWIDE CLASS
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

156.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

157.   Plaintiffs bring this Count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this Claim, this Claim is asserted by each statewide class asserting claims related to a breach of warranty.

158.   The Magnuson-Moss Warrant Act (15 U.S.C. § 2301, *et seq.*) provides that any warrantor warranting a consumer product to a consumer by means of a written warranty must fully and conspicuously disclose in simple and readily understood language, the terms and conditions of the warranty to the extent required by rules of the Federal Trade Commission. 15 U.S.C.A. § 2302.

- 53 -

159.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).  They are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.  Each bought a Defective Vehicle for non-business or commercial purposes, and used the Vehicle for ordinary personal, family, or household purposes.

159.   The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).  The class is defined to exclude vehicles purchased for commercial or business purposes.  Each defective car or truck purchased by a Class Member was used for personal, family, or household purposes (*e.g.*, driving the kids to school, going to the grocery story, driving to church, picking up the kids from piano lessons, driving to work, and driving to and from home).

160.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).  Honda makes and sells cars to consumers, knowing that those vehicles are bought for personal, family, or household purposes.  Takata manufactures airbags intended to be placed in cars and trucks that are purchased for personal, family, or household purposes.

161.   Defendants provided Plaintiffs and Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).  As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for their ordinary purpose

- 54 -

as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.  U.C.C. § 2-314. The UCC and all states define "implied warranty of merchantability" to include warranting that a car or truck will not have a defective airbag.

162.   Defendants breached these implied warranties, as described in detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(I).  Without limitation, the Defective Vehicles share common design defects in that they are equipped with defective airbags that can explode, leaving drivers and passengers in the defective cars and trucks vulnerable to serious injury and death.

163.   Defendants have admitted that the Defective Vehicles are defective in issuing its recalls, but the recalls are woefully insufficient to address each of the defects.

164.   In their capacity as warrantors, as Defendants knew of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that would exclude coverage of the defects is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

165.   To wit:  any limitations on the warranties would be procedurally unconscionable.  Defendants and the Class Members had unequal information and bargaining power at the time of purchase and lease, Plaintiffs and the other Class

- 55 -

Members had no other options for purchasing warranty coverage other than directly from Defendants.

166.   Any limitations on the warranties would be substantively unconscionable. Defendants knew that the Defective Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired.  Defendants failed to disclose these defects to Plaintiffs and the other Class Members and allowed the consumers to reasonably assume that the airbags functioned without posing a risk of injury or death.  Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

167.   Plaintiffs and each of the other Class Members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract. But privity is not necessary, because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of the implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit consumers.  Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

168.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until

- 56 -

such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

169.   Furthermore, affording Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here.  At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

170.   Plaintiffs and the other Class Members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them.  Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class Members have not re-accepted their Defective Vehicles by retaining them.

171.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $75,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class

- 57 -

Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

172.   Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(I).  Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and Class Members to recover out of pocket costs incurred, as discussed above.

173.   Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the airbags in their vehicles.  Such expenses and losses will continue as Plaintiffs and Class Members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through the recall process.

174.   The right of Class Members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law.  Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by the Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## SECOND CLAIM FOR RELIEF

### ON BEHALF OF THE NATIONWIDE CLASS
### FRAUD BY CONCEALMENT UNDER MICHIGAN LAW

175.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

176.   This Claim is brought on behalf of the Nationwide Class under Michigan law.  Defendant TK Holdings, the American subsidiary of Takata Corporation, is headquartered and does substantial business in Auburn Hills, Michigan.

177.   As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

178.   Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as reliable and safe and proclaimed that Defendants maintain the highest safety standards.  Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers

- 59 -

information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

179. In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and Class Members. These omitted facts were material because they directly impact the safety of the Defective Vehicles. Whether or not an airbag will improperly explode shrapnel at passengers at great speeds is a material safety concern. Defendants possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

180. Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class Members to purchase the Defective Vehicles at a higher price, which did not match the vehicles' true value.

181. Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs and Class Members' actions were reasonable and justified. Defendants were in exclusive control of the material facts concerning the airbag defects and such facts were not known to the public or the Class Members.

182. As a result of the concealment and/or suppression of facts, Plaintiffs and Class Members have sustained and will continue to sustain damages arising from the

- 60 -

difference between the price that Plaintiffs and the Classes paid and the actual value that they received.

183.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being to enrich Defendants.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### THIRD CLAIM FOR RELIEF

### ON BEHALF OF THE CALIFORNIA CLASS
### (VIOLATION OF CALIFORNIA CIVIL CODE § 1770)

184.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

185.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the California Class pursuant to the California Consumer Legal Remedies Act, CAL. CIV. CODE § 1770(a) ("CLRA").

186.   The CLRA prohibits:  "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or serves to any consumer . . . ."  CAL. CIV. CODE § 1770(a).  The code lists the following acts and practices have been declared unfair and deceptive:

(5)   Representing that goods have . . . characteristics . . . which they do not have . . .;

(7)   Representing that goods . . . are of a particular standard, quality, or grade…if they are of another; and

- 61 -

   (9)  Advertising goods or services with intent not to sell
      them as advertised;

CAL. CIV. CODE § 1770(a).

  187. Plaintiffs, California Class members, and Defendants are "persons"

within the meaning of CAL. CIV. CODE § 1761(c).

  188. Defendants engaged in "transactions" within the meaning of CAL. CIV.

CODE § 1761(e).

  189. In the course of their business, Defendants engaged in unfair and

deceptive trade practices by representing that the Defective Vehicles and vehicle

components had characteristics which they did not have, representing that the

Defective Vehicles and vehicle components complied with a higher standard than they

did, and advertising the Defective Vehicles and components with intent not to sell

them as advertised.  Defendants employed deception, fraud, false promises, false

pretenses, and misrepresentations in order to induce the California Class into a

transaction.

  190. Defendants possessed exclusive knowledge of the defects rendering

Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable

than similar vehicles.  Defendants knew of the Takata airbag's propensity to discharge

shrapnel upon deployment and otherwise malfunction in a hazardous and deadly

manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or

pose an unreasonable risk of death or serious bodily injury to the California Class,

passengers, other motorists, pedestrians, and the public at large, because the Takata

airbags are susceptible to exploding and expelling shrapnel upon deployment or other malfunctions.  Defendants had this knowledge at the time they engaged in sales and leases or thereafter.

191.   The propensity of the Defective Vehicles' Takata airbags to explode and expel shrapnel upon deployment or otherwise malfunction in a lethal and injurious manner was material to the California Class.  Had the California Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

192.   Defendants each owed the California Class members a duty under the CLRA to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the CLRA.

193.   Defendants breached their duties under the CLRA by intentionally withholding material information that they knew about the hazardous and deadly nature of their vehicles and vehicle components.  Defendants intentionally withheld such information in order to induce the California Class into a transaction.

194.   Defendants breached their duties under the CLRA by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags and purposefully withholding from the California Class material facts that contradicted these representations.

- 63 -

195.   Defendants breached their duties under the CLRA by engaging in a deceptive marketing campaign and recall program designed to mislead the California Class about the hazards of their vehicles and vehicle components.  To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

196.   Defendants breached their duties under the CLRA by making other material misstatements about the safety and reliability of Defective Vehicles that were either false or misleading.

197.   As a result of the Defendants' breaches of their duties under the CLRA, the California Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the Defective Vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the California Class.

198.   As a result of the Defendants' acts, omissions, and other practices in violation of the CLRA and their duties thereunder, Defendants' proximately caused and caused-in-fact losses to the California Class.

199.   The California Class suffered the following losses as a proximate cause of Defendant's practices:

- 64 -

a)    The California Class overpaid for their vehicles and did not receive the benefit of their bargain–vehicles containing airbags that did not pose safety risks.

b)    The California Class suffered losses to the resale value of their Defective Vehicles.  The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

c)    The California Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

200.   Pursuant to CAL. CIV. CODE § 1780(a), the California Class seeks monetary relief against Defendants measured by the greater of 1) their actual damages or 2) $1,000, as well as an order enjoining the Defendants' methods acts, and practices, and punitive damages.  Pursuant to CAL. CIV. CODE § 1780(b), the California Class seeks the greater of their 1) actual damages or 2) $5,000 for each senior citizen or disabled person affected by Defendants' violations of the CLRA.

**FOURTH CLAIM FOR RELIEF**

**ON BEHALF OF THE CALIFORNIA CLASS**
**(VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW)**
**(CAL. BUS. & PROF. CODE § 17200)**

201.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

- 65 -

202.   Plaintiffs bring this claim for relief on behalf of the members of the California Class pursuant to the California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 ("UCL").

203.   The UCL prohibits:  "unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

204.   In the course of their business, Defendants engaged in unlawful, unfair, and fraudulent business acts, as well as unfair, deceptive, untrue or misleading advertising by representing that the Defective Vehicles and vehicle components had characteristics which they did not have, representing that the Defective Vehicles and vehicle components complied with a higher standard than they did, and advertising the Defective Vehicles and components with intent not to sell them as advertised. Defendants employed deception, fraud, false promises, false pretenses, and misrepresentations in order to induce the California Class into a transaction.

205.   Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles.  Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the California Class, passengers, other motorists, pedestrians, and the public at large, because the Takata

- 66 -

airbags are susceptible to discharging shrapnel upon deployment or other malfunctions. Defendants had this knowledge at the time it engaged in sales and leases or thereafter.

206. The propensity of the Defective Vehicles' Takata airbags to discharge shrapnel upon deployment or otherwise malfunction was material to the California Class. Had the California Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

207. Defendants each owed the California Class members a duty under the UCL to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the UCL.

208. Defendants breached their duties under the UCL by intentionally withholding such material information about the hazardous and deadly nature of their vehicles and vehicle components. Defendants intentionally withheld such information in order to induce the California Class into a transaction.

209. Defendants breached their duties under the UCL by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags and purposefully withholding from the California Class material facts that contradicted these representations.

210. Defendants breached their duties under the UCL by engaging in a deceptive marketing campaign and recall program designed to mislead the California

- 67 -

Class about the hazards of their vehicles and vehicle components.  To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

211.   Defendants also breached their duties under the UCL by making other material misstatements about the safety and reliability of the Defective Vehicles that were either false or misleading.

212.   As a result of the Defendants' breaches of their duties under the UCL, the California Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the Defective Vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the California Class.

213.   As a result of the Defendants' acts, omissions, and other practices in violation of the UCL and their duties thereunder, Defendants' proximately caused and caused-in-fact ascertainable losses to the California Class.

214.   The California Class suffered the following ascertainable losses as a proximate cause of Defendant's practices:

> a)   The California Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

b) The California Class suffered losses to the resale value of their Defective Vehicles. The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

c) The California Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

215.   Pursuant to Cal. Bus. & Prof. Code § 17203, the California Class seeks to enjoin the Defendants from engaging the acts described above.  The California Class also seeks a judgment to restore the Class for monetary and property losses due to the violations of the UCL.

## FIFTH CLAIM FOR RELIEF

### ON BEHALF OF THE CALIFORNIA CLASS
### (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)
### (CAL. COM. CODE § 2314)

216.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

217.   This claim is brought under California law on behalf of the California Class against Takata and Honda.

218.   Defendants were merchants with respect to motor vehicles within the meaning of CAL. COM. CODE § 2314.

- 69 -

219.   Honda and Takata impliedly warrantied that the Defective Vehicles and airbags were in merchantable condition and fit for the ordinary purposes for which they were being sold when the California Class purchased their Defective Vehicles containing Takata airbags.

220.   These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

221.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.  Notice of these issues is being given by the California Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

222.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, California Class members have been damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### ON BEHALF OF THE CALIFORNIA CLASS
### (FRAUD BY CONCEALMENT)

223.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

224.   This claim is brought under California law on behalf of the California Class against Takata and Honda.

225.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

226.   The Defendants knew these representations were false when made.

227.   The vehicles purchased or leased by the California Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

228.   The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe, and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the California Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

229.   The aforementioned concealment was material, because if it had been disclosed the California Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

230.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally

- 71 -

made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

231.   The California Class relied on the Defendants' reputations – along with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements  – in purchasing, leasing or retaining the Defective Vehicles.

232.   As a result of their reliance, the California Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase, diminished value of their vehicles, and loss of use of their vehicles.

233.   The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the California Class.  The California Class is therefore entitled to an award of punitive damages.

**SEVENTH CLAIM FOR RELIEF**

**ON BEHALF OF THE FLORIDA CLASS**
**(DECEPTIVE ACTS IN VIOLATION OF FLORIDA LAW)**
**(FLA. STAT. §§ 501.204, *et seq.*)**

234.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

235.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the Florida Class pursuant to the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §§ 501.204, *et seq*. ("FDUTPA").

236.   The FDUTPA prohibits:  "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…"  FLA. STAT. § 501.204.

237.   Plaintiffs and Florida Class members are "consumers" within the meaning of FLA. STAT. § 501.203(7).  They are individuals who purchased vehicles and vehicle components from Defendant manufacturers and sellers.

238.   Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).  They advertised sales and solicited purchases of vehicles.

239.   In the course of their business, Defendants in unconscionable, unfair, and deceptive acts and practices in order to sell vehicles and vehicle components. Defendants employed deception, fraud, false promises, false pretenses, and misrepresentations in order to induce the Florida Class into a transaction.

240.   Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles.  Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Florida Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to exploding shrapnel upon deployment or other malfunctions. Defendants had this knowledge at the time it engaged in sales and leases or thereafter.

- 73 -

241. The propensity of the Defective Vehicles' Takata airbags to explode shrapnel upon deployment or otherwise malfunction in a lethal and injurious manner was material to the Florida Class. Had the Florida Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

242. Defendants each owed the Florida Class members a duty under the FDUTPA to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the FDUTPA.

243. Defendants breached their duties under the FDUTPA by intentionally withholding such material information that they knew about the hazardous and deadly nature of their vehicles and vehicle components. Defendants intentionally withheld such information in order to induce the Florida Class into a transaction.

244. Defendants breached their duties under the FDUTPA by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags and purposefully withholding from the Florida Class material facts that contradicted these representations.

245. Defendants breached their duties under the FDUTPA by engaging in a deceptive marketing campaign and recall program designed to mislead the Florida Class about the hazards of their vehicles and vehicle components. To protect their

- 74 -

profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

246.   Defendants breached their duties under the FDUTPA by making other material misstatements about the safety and reliability of Defective Vehicles that were either false or misleading.

247.   As a result of the Defendants' breaches of their duties under the FDUTPA, the Florida Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the Defective Vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the Florida Class.

248.   As a result of the Defendants' acts, omissions, and other practices in violation of the FDUTPA and their duties thereunder, Defendants' proximately caused and caused-in-fact losses to the Florida Class.

249.   The Florida Class suffered the following losses as a proximate cause of Defendant's practices:

    a)    The Florida Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

    b)    The Florida Class suffered losses to the resale value of their Defective Vehicles. The diminishment of the

- 75 -

Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags. No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

c)   The Florida Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

250.   Pursuant to FLA. STAT. ANN. §§ 501.211(2), 2105(1), the Florida Class seeks monetary relief against Defendants measured by its actual damages. The Florida Class also seeks attorney's fees, court costs, and injunctive relief.

## EIGHTH CLAIM FOR RELIEF

### ON BEHALF OF THE FLORIDA CLASS
### (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)
### (FLA STAT. ANN § 672.314)

251.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

252.   This claim is brought under Florida law on behalf of the Florida Class against Takata and Honda.

253.   Defendants were merchants with respect to motor vehicles within the meaning of FLA STAT. ANN § 672.314.

254.   Honda and Takata impliedly warranted that the Defective Vehicles and airbags were in merchantable condition and fit for the ordinary purposes for which

- 76 -

they were being sold when the Florida Class purchased their Defective Vehicles containing Takata airbags.

255.   These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

256.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.  Notice of these issues is being given by the Florida Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

257.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Florida Class members have been damaged in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### ON BEHALF OF THE FLORIDA CLASS
### (FRAUD BY CONCEALMENT)

258.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

259.   This claim is brought under Florida law on behalf of the Florida Class against Takata and Honda.

260.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

261.   The Defendants knew these representations were false when made.

262.   The vehicles purchased or leased by the Florida Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

263.   The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe, and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Florida Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

264.   The aforementioned concealment was material, because if it had been disclosed the Florida Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

265.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

- 78 -

266.   The Florida Class relied on the Defendants' reputations – long with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements – in purchasing, leasing or retaining the Defective Vehicles.

267.   As a result of their reliance, the Florida Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase, diminished value of their vehicles, and loss of use of their vehicles.

268.   The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Florida Class.  The Florida Class is therefore entitled to an award of punitive damages.

### TENTH CLAIM FOR RELIEF

**ON BEHALF OF THE NEW JERSEY CLASS**
**(DECEPTIVE ACTS IN VIOLATION OF NEW JERSEY LAW)**
**(N.J. STAT. ANN. § 56:8-1, *et seq.*)**

269.   Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

270.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the New Jersey Class pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8 1, *et seq.* ("NJCFA").

271.   The New Jersey Consumer Fraud Act ("NJCFA") declares:

- 79 -

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . .

N.J. STAT. § 56:8-2.

272. Plaintiff, New Jersey Class members, and Defendants are "persons" within the meaning of N.J. STAT. § 56:8-1(d).

273. Defendants engaged in "sales" within the meaning of N.J. STAT. § 56:8-1(e) and "advertised" within the meaning of N.J. STAT. § 56:8-1(a).

274. In the course of their business, Defendants engaged in unlawful and unconscionable trade practices by employing deception, fraud, false promises, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, and omission of material facts with intent that others rely upon such practices in connection with the sale or lease of Defective Vehicles. Defendants failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive, misrepresent, and omit material facts.

275. Defendants possessed exclusive knowledge of the defects rendering the Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles. Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly

- 80 -

manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the New Jersey Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to exploding and expelling shrapnel upon deployment or other malfunctions.  Defendants had this knowledge at the time they engaged in sales and leases or thereafter.

276.   The propensity of the Defective Vehicles' Takata airbags to expel shrapnel upon deployment or otherwise malfunction was material to the New Jersey Class.  Had the New Jersey Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

277.   Defendants each owed the New Jersey Class members a duty under the NJCFA to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the NJCFA.

278.   Defendants breached their duties under the NJCFA by intentionally withholding material information about the hazardous and deadly nature of their vehicles and vehicle components.  Defendants intentionally withheld such information in order to induce the New Jersey Class into a transaction.

279.   Defendants breached their duties under the NJCFA by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata

- 81 -

airbags and purposefully withholding from the New Jersey Class material facts that contradicted these representations.

280.   Defendants breached their duties under the NJCFA by engaging in a deceptive marketing campaign and recall program designed to mislead the New Jersey Class about the hazards of their vehicles and vehicle components. To protect their profits and to avoid remediation costs, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy or lease the Defective Vehicles and allowed all Defective Vehicle owners and lessors to continue driving highly dangerous vehicles.

281.   Defendants breached their duties under the NJCFA by making other material misstatements about the safety and reliability of Defective Vehicles that were either false or misleading.

282.   As a result of the Defendants' breaches of their duties under the NJCFA, the New Jersey Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the defective vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the New Jersey Class.

283.   As a result of the Defendants' acts, omissions, and other practices in violation of the NJCFA and their duties thereunder, Defendants' proximately caused and caused-in-fact ascertainable losses to the New Jersey Class.

284.   The New Jersey Class suffered the following ascertainable losses as a proximate cause of Defendant's practices:

a)   The New Jersey Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

b)   The New Jersey Class suffered losses to the resale value of their Defective Vehicles. The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

c)   The New Jersey lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

285.   Pursuant to N.J. STAT. ANN. § 56:8-19, the New Jersey Class seeks monetary relief against Defendants measured by three times their ascertainable losses to be determined at trial, as well as reasonable attorneys' fees, filing fees, reasonable costs of the suit, and any other legal or equitable relief, including injunctive relief.

## ELEVENTH CLAIM FOR RELIEF

### ON BEHALF OF THE NEW JERSEY CLASS
### (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)
### (N.J. STAT. ANN. § 12A:2-314)

286.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

287.   This claim is brought under New Jersey law on behalf of the New Jersey Class against Takata and Honda.

- 83 -

288.   Defendants were merchants with respect to motor vehicles within the meaning of N.J. STAT. ANN. § 12A:2-314.

289.   Honda and Takata impliedly warrantied that the Defective Vehicles and airbags were in merchantable condition and fit for the ordinary purposes for which they were being sold when the New Jersey Class purchased their Defective Vehicles containing Takata airbags.

290.   These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

291.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.  Notice of these issues is being given by the New Jersey Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

292.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New Jersey Class members have been damaged in an amount to be proven at trial.

- 84 -

**TWELFTH CLAIM FOR RELIEF**

**ON BEHALF OF THE NEW JERSEY CLASS**
**(FRAUD BY CONCEALMENT)**

293.   This claim is brought under New Jersey law on behalf of the New Jersey Class against Takata and Honda.

294.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

295.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

296.   The Defendants knew these representations were false when made.

297.   The vehicles purchased or leased by the New Jersey Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to discharging shrapnel upon deployment or other malfunctions.

298.   The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe, and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the New Jersey Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

299.   The aforementioned concealment was material, because if it had been disclosed the New Jersey Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

- 85 -

300.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

301.   The New Jersey Class relied on the Defendants' reputations – along with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements – in purchasing, leasing or retaining the Defective Vehicles.

302.   As a result of their reliance, the New Jersey Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase, diminished value of their vehicles, and loss of use of their vehicles.

303.   The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the New Jersey Class.  The New Jersey Class is therefore entitled to an award of punitive damages.

010477-11 728937 V1

## THIRTEENTH CLAIM FOR RELIEF

### ON BEHALF OF THE NEW YORK CLASS
**(DECEPTIVE ACTS IN VIOLATION OF NEW YORK LAW)**
**(N.Y. GEN. BUS. LAW § 349 ,et seq.)**

304.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

305.   Plaintiffs bring this claim for relief on behalf of themselves and on behalf of the members of the New York Class pursuant to the New York Business Law, N.Y. GEN. BUS. LAW §§ 349-350 ("NYBL")

306.   N.Y. GEN. BUS. LAW § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce…"  N.Y. GEN. BUS. LAW § 349.

307.   N.Y. GEN. BUS. LAW § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. GEN. BUS. LAW § 350.

308.   In the course of their business, Defendants engaged in deceptive acts and practices within the meaning of N.Y. GEN. BUS. LAW § 349 and engaged in false advertising within the meaning of N.Y. GEN. BUS. LAW § 350 by employing deception, fraud, false promises, false pretenses, misrepresentations, and the knowing concealment, suppression, and omission of material facts with intent that the New York Class rely upon such practices in connection with the sale or lease of the Defective Vehicles.  Defendants failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein

- 87 -

and otherwise engaged in activities with a tendency or capacity to deceive, misrepresent, and omit material facts.

309.  Defendants possessed exclusive knowledge of the defects rendering the Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles.  Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the New York Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to exploding and expelling shrapnel upon deployment or other malfunctions.  Defendants had this knowledge at the time they engaged in sales and leases or thereafter.

310.  The propensity of the Defective Vehicles' Takata airbags to explode and expel shrapnel upon deployment or otherwise malfunction in a fatal or injurious manner was material to the New York Class.  Had the New York Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

311.  Defendants each owed the New York Class members a duty under the NYBL to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the NYBL.

- 88 -

312.   Defendants breached their duties under the NYBL by intentionally withholding material information about the hazardous and deadly nature of their vehicles and vehicle components.  Defendants intentionally withheld such information in order to induce the New York Class into a transaction.

313.   Defendants breached their duties under the NYBL by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags and purposefully withholding from the New York Class material facts that contradicted these representations.

314.   Defendants breached their duties under the NYBL by engaging in a deceptive marketing campaign and recall program designed to mislead the New York Class about the hazards of their vehicles and vehicle components.  To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

315.   Defendants breached their duties under the NYBL by making other material misstatements about the safety and reliability of the Defective Vehicles that were either false or misleading.

316.   As a result of the Defendants' breaches of their duties under the NYBL, the New York Class was deceived by the Defendants' omissions, misstatements, and

- 89 -

other practices into believing the defective vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the New York Class.

317.   As a result of the Defendants' acts, omissions, and other practices in violation of the NYBL and their duties thereunder, Defendants' proximately caused and caused-in-fact ascertainable losses to the New York Class.

318.   The New York Class suffered the following ascertainable losses as a proximate cause of Defendant's practices:

a)   The New York Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

b)   The New York Class suffered losses to the resale value of their Defective Vehicles.  The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

c)   The New York Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

319.   Pursuant to N.Y. GEN. BUS. LAW. § 349(h), the New York Class seeks injunctive relief against the deceptive acts and practices.  The Class also seeks an award of the greater of (a) $50 and (b) three times actual damages, as well as

- 90 -

reasonable attorneys' fees, filing fees, reasonable costs of the suit, and any other legal or equitable relief.

## FOURTEENTH CLAIM FOR RELIEF

### ON BEHALF OF THE NEW YORK CLASS
### (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)
### (N.Y. U.C.C. LAW § 2-314)

320. This claim is brought under New York law on behalf of the New York Class against Takata and Honda.

321. Defendants were merchants with respect to motor vehicles within the meaning of N.Y. U.C.C. Law §2-314).

322. Honda and Takata impliedly warranted that the defective vehicles and airbags were in merchantable condition and fit for the ordinary purposes for which they were being sold when the New York Class purchased their Defective Vehicles containing Takata airbags.

323. These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

324. Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations. Notice of these issues is being given by the New York Class through

this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

325. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, New York Class members have been damaged in an amount to be proven at trial.

## FIFTEENTH CLAIM FOR RELIEF

### ON BEHALF OF THE NEW YORK CLASS
### (FRAUD BY CONCEALMENT)

326. This claim is brought under New York law on behalf of the New York Class against Takata and Honda.

327. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

328. As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

329. The Defendants knew these representations were false when made.

330. The vehicles purchased or leased by the New York Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

331. The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to exploding shrapnel upon deployment or other lethal or

- 92 -

injurious malfunctions, because the New York Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

332.   The aforementioned concealment was material, because if it had been disclosed the New York Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

333.   The aforementioned representations were also material because they were facts that would typically be relied on by a person· purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

334.   The New York Class relied on the Defendants' reputations – along with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements – in purchasing, leasing or retaining the Defective Vehicles.

335.   As a result of their reliance, the New York Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase, diminished value of their vehicles, and loss of use of their vehicles.

336.   The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the New York Class.  The New York Class is therefore entitled to an award of punitive damages.

## SIXTEENTH CLAIM FOR RELIEF

**ON BEHALF OF THE OHIO CLASS**
**(DECEPTIVE ACTS IN VIOLATION OF OHIO LAW)**
**(OHIO REV. CODE ANN. § 1345.02, *et seq.*)**

337.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

338.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the Ohio Class pursuant to the Ohio Consumer Sales Practices Act. OHIO REV. CODE ANN. § 1345.02 ("OCSPA").

339.   The OCSPA declares that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice by a supplier violates [the OCSPA] whether it occurs before, during, or after the transaction."  OHIO REV. CODE § 1345.02(A).  Unfair and deceptive practices include:

> (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; and
>
> (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

OHIO REV. CODE § 1345.02(B)

- 94 -

340.   Plaintiffs, Ohio Class, and Defendants are "persons" within the meaning of OHIO REV. CODE ANN. § 1345.01(B). They are individuals and corporations, or other legal entities.

341.   Plaintiffs and Ohio Class members are "consumers" within the meaning of OHIO REV. CODE ANN. § 1345.01(D). They purchased or leased Defective Vehicles from Defendants for personal use.

342.   Defendants were "suppliers" within the meaning of OHIO REV. CODE ANN. § 1345.01(D). who purchased vehicles and vehicle components from Defendant manufacturers and sellers.

343.   Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8). They advertised sales and solicited purchases of vehicles.

344.   The parties engaged in "consumer transactions" within the meaning of OHIO REV. CODE ANN. § 1345.01(A). Defendants sold or leased vehicles to the Plaintiffs primarily for personal purposes.

345.   Defendants' actions and practices have previously been declared unlawful by Ohio authorities. As alleged above, Honda and Takata withheld material information from the Ohio class, did not timely notify the Ohio Class when information became available, and did not act in the interests of the Ohio Class when Defendants realized they had put the Class' safety at risk.  Ohio courts have previously declared such actions to be deceptive or unconscionable under §§ 1345.02 or 1345.03. See, e.g., *Arales v. Furs by Weiss, Inc.*, No. 81603, 2003 WL 21469131, at *1-4 (Ohio

- 95 -

Ct. App. June 26, 2003) (upholding jury determination that retailer's omission to

consumer was unfair or deceptive under § 1345.02); *Lump v. Best Door & Window,*

*Inc.*, Nos. 8-01-09, 8-01-10, 2002 WL 462863, at *4-*5 (Ohio Ct. App. Mar. 27,

2002) (a company's failure to perform obligations to consumers in a timely manner is

a deceptive act or unconscionable practice in violation of §§ 1345.02 or 1345.03); *id.*

at *5 (a supplier in connection with a consumer transaction who consistently maintains

a pattern of inefficiency, incompetency, or continually stalls and evades his legal

obligations to consumers, commits an unconscionable act and practice in violation of

§ 1345.03; *id.* at *10-11 (Walters, J., concurring) ("it is clear that an omission may

constitute a deceptive act or practice under" Ohio Rev. Code Ann. § 1345.02); *Baker*

*v. Tri-County Harley Davidson, Inc.*, No. CA98-12-250, 1999 WL 1037262, at *2

(Ohio Ct. App. Nov. 15, 1999) (finding that courts have determined untimeliness "to

be a deceptive or unconscionable practice"); *Miner v. Jayco, Inc.*, No. F-99-001, 1999

WL 651945, at *7-8 (Ohio Ct. App. Aug. 27, 1999) ("a supplier in connection with a

consumer transaction who consistently maintains a pattern of inefficiency,

incompetency, or continually stalls and evades his legal obligations to consumers,

commits an unconscionable act and practice in violation of" § 1345.03); *Crye v.*

*Smolak*, 674 N.E. 2d 779, 783 (Ohio Ct. App. Apr. 23, 1996) ("untimeliness had been

determined to be a deceptive act or unconscionable practice, violating R.C. 1345.02 or

1345.03, by various courts of this state"); *Daniels v. True*, 547 N.E. 2d 425, 426-27

(Ohio Misc. 2d Dec. 9, 1988) (same as Miner); *Brown v. Lyons*, 332 N.E. 2d 380, 386 (Ohio Misc. Nov. 12, 1974) (same).

346.   In the course of their business, Defendants acted in an unconscionable, unfair, and deceptive manner in order to induce the Ohio class into consumer transactions. Defendants falsely advertised, deceived, and induced the Ohio class into believing its vehicles and constituent components had performance characteristics and benefits that it does not have. And they deceived the Class into believing that the vehicles were of a particular standard, quality, grade, style, prescription, or model, that they were not.

347.   Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles.  Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Ohio Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to exploding shrapnel upon deployment or other malfunctions. Defendants had this knowledge at the time it engaged in sales and leases or thereafter.

348.   The propensity of the Defective Vehicles' Takata airbags to explode shrapnel upon deployment or otherwise malfunction in a lethal and injurious manner was material to the Ohio Class.  Had the Ohio Class known that their vehicles had

- 97 -

these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

349.   Defendants each owed the Ohio Class members a duty under the OCSPA to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the OCSPA.

350.   Defendants breached their duties under the OCSPA by intentionally withholding such material information that they knew about the hazardous and deadly nature of their vehicles and vehicle components. Defendants intentionally withheld such information in order to induce the Ohio Class into a transaction.

351.   Defendants breached their duties under the OCSPA by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags and purposefully withholding from the Ohio Class material facts that contradicted these representations.

352.   Defendants breached their duties under the OCSPA by engaging in a deceptive marketing campaign and recall program designed to mislead the Ohio Class about the hazards of their vehicles and vehicle components. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the

- 98 -

Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

353.   Defendants breached their duties under the OCSPA by making other material misstatements about the safety and reliability of Defective Vehicles that were either false or misleading.

354.   As a result of the Defendants' breaches of their duties under the OCSPA, the Ohio Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the defective vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the Ohio Class.

355.   As a result of the Defendants' acts, omissions, and other practices in violation of the OCSPA and their duties thereunder, Defendants' proximately caused and caused-in-fact losses to the Ohio Class.

356.   The Ohio Class suffered the following losses as a proximate cause of Defendant's practices:

    a)    The Ohio Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

    b)    The Ohio Class suffered losses to the resale value of their Defective Vehicles. The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

010477-11  728937 V1

c)     The Ohio Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

357.    Pursuant to OHIO REV. CODE ANN. § 1345.09, the Ohio Class seeks the greater of (a) $200 or (b) three times actual damages, plus $5,000 per violation. The Class also seeks reasonable attorney's fees and costs.

## SEVENTEENTH CLAIM FOR RELIEF

### ON BEHALF OF THE OHIO CLASS
### (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)
### (OHIO REV. CODE ANN. § 1302.27)

358.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

359.    This claim is brought under Ohio law on behalf of the Ohio Class against Takata and Honda.

360.    Defendants were merchants with respect to motor vehicles within the meaning of OHIO REV. CODE ANN. § 1302.27.

361.    Honda and Takata impliedly warrantied that the defective vehicles and airbags were in merchantable condition and fit for the ordinary purposes for which they were being sold when the Ohio Class purchased their Defective Vehicles containing Takata airbags.

362.    These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

- 100 -

Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

363.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.  Notice of these issues is being given by the Ohio Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

364.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Ohio Class members have been damaged in an amount to be proven at trial.

### EIGHTEENTH CLAIM FOR RELIEF

### ON BEHALF OF THE OHIO CLASS
### (FRAUD BY CONCEALMENT)

365.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

366.   This claim is brought under Ohio law on behalf of the Ohio Class against Takata and Honda.

367.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

368.   The Defendants knew these representations were false when made.

- 101 -

369.   The vehicles purchased or leased by the Ohio Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

370.   The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Ohio Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

371.   The aforementioned concealment was material, because if it had been disclosed the Ohio Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

372.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

373.   The Ohio Class relied on the Defendants' reputations – along with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative

assurance that its vehicles and/or airbags were safe and reliable and other similar false statements – in purchasing, leasing or retaining the Defective Vehicles.

374. As a result of their reliance, the Ohio Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase, diminished value of their vehicles, and loss of use of their vehicles.

375. The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Ohio Class. The Ohio Class is therefore entitled to an award of punitive damages.

## NINTEENTH CLAIM FOR RELIEF

### ON BEHALF OF THE VIRGINIA CLASS
### (DECEPTIVE ACTS IN VIOLATION OF VIRGINIA LAW)
#### (VA. CODE ANN. § 59.1- 196, *et seq.*)

376. Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

377. Plaintiffs bring this claim on behalf of themselves and the Virginia Statewide Consumer Class (the "Virginia Class") against Takata and Honda under the Virginia Consumer Protection Act.

378. The Virginia Consumer Protection Act ("VCPA") § 59.1-200 prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," including: "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits," "[m]isrepresenting that

- 103 -

goods or services are of a particular standard, quality, grade, style, or model," "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised," and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

379.   Defendants are "supplier[s]" under VA. CODE ANN. § 59.1-198 because they manufacture and sell vehicles to consumers.

380.   Members of the Virginia Class are "consumer[s]" engaging in "consumer transactions" as defined by VA. CODE ANN. § 59.1-198. The consumers purchased or leased one or more Defective Vehicles.

381.   In the course of their business, Defendants willfully misrepresented that the Defective Vehicles and Takata airbag systems had certain quantities, characteristics, uses, and benefits that they did not have.  Defendants misrepresented that the Defective Vehicles and Takata airbags were of a particular standard, quality, grade that they were not.  Defendants advertised the Defective Vehicles and Takata airbags with intent not to sell them as advertised.  And Defendants used other deception, fraud, false pretenses, false promises, and misrepresentation with the intent that the Virginia Class rely upon such practices in connection with the sale or lease of Defective Vehicles and Takata airbags.

382.   Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable

- 104 -

than similar vehicles. Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly manner. Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Virginia Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to exploding shrapnel upon deployment or other malfunctions. Defendants had this knowledge at the time it engaged in sales and leases or thereafter.

383. The propensity of the Defective Vehicles' Takata airbags to discharge shrapnel upon deployment or otherwise malfunction was material to the Virginia Class. Had the Virginia Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

384. Defendants each owed the Virginia Class members a duty under the VCPA to disclose this material information about the defective nature of their vehicles and Takata Airbags and the risks they posed.

385. Defendants breached their duties under the VCPA by intentionally withholding such material information that they knew about the hazardous and deadly nature of their vehicles and vehicle components. Defendants intentionally withheld such information in order to induce the Virginia Class into a transaction.

386. Defendants breached their duties under the VCPA by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata

- 105 -

airbags and purposefully withholding from the Virginia Class material facts that contradicted these representations.

387.   Defendants breached their duties under the VCPA by engaging in a deceptive marketing campaign and recall program designed to mislead the Virginia Class about the hazards of their vehicles and vehicle components.  To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy or lease the Defective Vehicles and allowed all Defective Vehicle owners and lessors to continue driving highly dangerous vehicles.

388.   Defendants breached their duties under the VCPA by making other material misstatements about the safety and reliability of Defective Vehicles that were either false or misleading.

389.   As a result of the Defendants' breaches of their duties under the VCPA, the Virginia Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the Defective Vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the Virginia Class.  Defendants' breaches thereby proximately caused and caused-in-fact losses to the Virginia Class.

390.   The Virginia Class suffered the following losses as a proximate cause of Defendant's practices:

- 106 -

a)    The Virginia Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

b)    The Virginia Class suffered losses to the resale value of their Defective Vehicles. The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

c)    The Virginia Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

391.   Pursuant to VA. CODE ANN. § 59.1-204, the Virginia Class seeks monetary relief against Defendants measured as the greater of (a) $500 for each class member or (b) actual damages.  If the trier of facts finds that the violations of the VCPA were willful, the Virginia Class seeks the greater of (a) $1,000 or (b) three times the actual damages.

**TWENTIETH CLAIM FOR RELIEF**

**ON BEHALF OF THE VIRGINIA CLASS**
**(BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)**
**(VA. CODE. ANN. § 8.2-314)**

392.   This claim is brought under Virginia law on behalf of the Virginia Class against Takata and Honda.

393.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

- 107 -

394.   Defendants were merchants with respect to motor vehicles within the meaning of VA. ANN. CODE § 8.2-304.

395.   Honda and Takata impliedly warrantied that the Defective Vehicles and airbags were in merchantable condition and suitable for the purposes for which they were being sold when the Virginia Class purchased their Defective Vehicles containing Takata airbags.

396.   These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of discharging shrapnel in the head and neck of the driver upon deployment or otherwise malfunctioning.

397.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.  Notice of these issues is being given by the Virginia Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

398.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Virginia Class members have been damaged in an amount to be proven at trial.

**TWENTY FIRST CLAIM FOR RELIEF**

**ON BEHALF OF THE VIRGINIA CLASS**
**(FRAUD BY CONCEALMENT)**

399.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

400.   In the event the Court declines to certify a Nationwide Class under California law, this claim is brought under Virginia law on behalf of the Virginia Class against Takata and Honda.

401.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

402.   The Defendants knew these representations were false when made.

403.   The vehicles purchased or leased by the Virginia Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

404.   The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Virginia Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

405.   The aforementioned concealment was material, because if it had been disclosed the Virginia Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

- 109 -

406.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

407.   The Virginia Class relied on the Defendants' reputations – along with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements – in purchasing, leasing or retaining the Defective Vehicles.

408.   As a result of their reliance, the Virginia Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

409.   The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Virginia Class.  The Virginia Class is therefore entitled to an award of punitive damages.

010477-11 728937 V1

### TWENTY SECOND CLAIM FOR RELIEF

#### ON BEHALF OF THE WASHINGTON CLASS
#### (DECEPTIVE ACTS IN VIOLATION OF WASHINGTON LAW)
#### (WASH. REV. CODE § 19.86.020, et seq.)

410.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

411.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the Washington Class under the Washington Consumer Protection Act, WASH. REV. CODE § 19.86.020, *et seq*. ("WCPA").

412.   The WCPA prohibits: "unfair or deceptive acts or practices in the conduct of any trade or commerce."  WASH. REV. CODE § 19.86.020.

413.   Plaintiffs, Washington Class members are "persons" within the meaning of WASH. REV. CODE § 19.86.010(1).

414.   Defendants engaged in "trade" and "commerce" within the meaning of WASH. REV. CODE § 19.86.010(2).  They sold assets and services directly and indirectly affecting the people of the state of Washington.

415.   In the course of their business, Defendants engaged in unfair and deceptive acts and practices in order to sell vehicles and vehicle components. Defendants employed deception, fraud, false promises, false pretenses, and misrepresentations in order to induce the Washington Class into a transaction.

416.   Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable

- 111 -

than similar vehicles.  Defendants knew of the Takata airbag's propensity to discharge shrapnel upon deployment and otherwise malfunction in a hazardous and deadly manner.  Defendants knew the Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Washington Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to exploding shrapnel upon deployment or other malfunctions. Defendants had this knowledge at the time it engaged in sales and leases or thereafter.

417.   The propensity of the Defective Vehicles' Takata airbags to explode shrapnel upon deployment or otherwise malfunction in a lethal and injurious manner was material to the Washington Class.  Had the Washington Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

418.   Defendants each owed the Washington Class members a duty under the WCPA to disclose this material information about the defective nature of their vehicles and vehicle components and risks posed by the Takata airbags under the WCPA.

419.   Defendants breached their duties under the WCPA by intentionally withholding such material information that they knew about the hazardous and deadly nature of their vehicles and vehicle components.  Defendants intentionally withheld such information in order to induce the Washington Class into a transaction.

- 112 -

420.   Defendants breached their duties under the WCPA by making incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags and purposefully withholding from the Washington Class material facts that contradicted these representations.

421.   Defendants breached their duties under the WCPA by engaging in a deceptive marketing campaign and recall program designed to mislead the Washington Class about the hazards of their vehicles and vehicle components.  To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

422.   Defendants breached their duties under the WCPA by making other material misstatements about the safety and reliability of Defective Vehicles that were either false or misleading.

423.   As a result of the Defendants' breaches of their duties under the WCPA, the Washington Class was deceived by the Defendants' omissions, misstatements, and other practices into believing the defective vehicles and vehicle components were safe, and no information to the contrary could have reasonably been known by the Washington Class.

- 113 -

424.   As a result of the Defendants' acts, omissions, and other practices in violation of the WCPA and their duties thereunder, Defendants' proximately caused and caused-in-fact losses to the Washington Class.

425.   The Washington Class suffered the following losses as a proximate cause of Defendant's practices:

  a)   The Washington Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.

  b)   The Washington Class suffered losses to the resale value of their Defective Vehicles.  The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  No informed, reasonable consumer would purchase the vehicles at an otherwise fair-market value knowing they risk being injured or killed by airbags that are supposed to protect them in case of an accident.

  c)   The Washington Class lost use of their vehicles when they stopped driving their Defective Vehicles as a reasonable reaction to the news reports and other releases of material information originally concealed and omitted by the Defendants.

426.   Pursuant to WASH. REV. CODE § 19.86.090, the Washington Class seeks monetary relief against Defendants in the amount of three times actual damages, attorney's fees, and costs of litigation.

## TWENTY THIRD CLAIM FOR RELIEF

### ON BEHALF OF THE WASHINGTON CLASS
### (BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY)
### (WASH. REV. CODE ANN. § 62A.2-314)

427.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

- 114 -

428.   This claim is brought under Washington law on behalf of the Washington Class against Takata and Honda.

429.   Defendants were merchants with respect to motor vehicles within the meaning of WASH. REV. CODE ANN. § 62A.2-314.

430.   Honda and Takata impliedly warrantied that the Defective Vehicles and airbags were in merchantable condition and fit for the ordinary purposes for which they were being sold when the Washington Class purchased their Defective Vehicles containing Takata airbags.

431.   These vehicles and airbags, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

432.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.  Notice of these issues is being given by the Washington Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

433.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Washington Class members have been damaged in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TWENTY FOURTH CLAIM FOR RELIEF

### ON BEHALF OF THE WASHINGTON CLASS
### (FRAUD BY CONCEALMENT)

434.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

435.   This claim is brought under Washington law on behalf of the Washington Class against Takata and Honda.

436.   As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

437.   The Defendants knew these representations were false when made.

438.   The vehicles purchased or leased by the Washington Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

439.   The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Washington Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

440.   The aforementioned concealment was material, because if it had been disclosed the Washington Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

- 116 -

441.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle.  The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags.  The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

442.   The Washington Class relied on the Defendants' reputations – along with their failure to disclose the Takata airbag's dangers and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements – in purchasing, leasing or retaining the Defective Vehicles.

443.   As a result of their reliance, the Washington Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain, overpayment at the time of purchase, diminished value of their vehicles, and loss of use of their vehicles.

444.   The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Washington Class.  The Washington Class is therefore entitled to an award of punitive damages.

010477-11 728937 V1

# PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves, the Classes, and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A.       An order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel.

B.       A declaration that the airbags in Defective Vehicles are defective.

C.       A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles.

D.       An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags.

E.       An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial.

F.       A declaration that the Defendants must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiffs and Class Members.

G.       An award of attorneys' fees and costs, as allowed by law.

010477-11 728937 V1

1  H.     An award of pre-judgment and post-judgment interest, as provided by

2  law.

3

4  I.     Leave to amend this Complaint to conform to the evidence produced at

5  trial.

6

7  J.     Such other relief as may be appropriate under the circumstances.

8  **DEMAND FOR JURY TRIAL**

9  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

10  demand a jury trial as to all issues triable by a jury.

11

12

13  DATED: November 7, 2014            HAGENS BERMAN SOBOL SHAPIRO LLP

14

15

16  By:   */s/ Thomas E. Loeser*
          Steve W. Berman (*pro hac vice pending*)
17      Thomas E. Loeser (SBN 202724)
18      1918 Eighth Avenue, Suite 3300
        Seattle, WA  98101
19      Telephone:  (206) 623-7292
        Facsimile:  (206) 623-0594
20      E-mail:  steve@hbsslaw.com
21                     tomloeser@hbsslaw.com

22      *Attorneys for Plaintiffs*

23

24

25

26

27

28

- 119 -